**Albert A. LIST, Plaintiff,**

v.

**FASHION PARK, INC., et al.,
Defendants.**

United States District Court
S. D. New York.
Oct. 23, 1963.

O'Brien, Driscoll & Raftery, New York City, Arthur F. Driscoll, Edward C. Raftery, Milton M. Rosenbloom, New York City, of counsel, for plaintiff.

Baer, Marks, Friedman & Berliner, New York City, William E. Friedman, Stephen F. Selig, New York City, of counsel, for defendants H. Hentz & Co. and William P. Green.

WYATT, District Judge.

Plaintiff List has brought an action against numerous defendants, based on a sale by him of stock as to which there are alleged to have been violations by defendants of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j (b); the "Act") and Rule 10b–5 promulgated by the Securities and Exchange Commission thereunder (17 C.F.R. § 240.10b–5)—so-called "antifraud" provisions.

Section 10(b) of the Act as supplemented by Rule 10b–5 applies to the purchaser of a security and makes unlawful in that connection (1) "any device, scheme, or artifice to defraud", (2) the making of "any untrue statement of a material fact" or the omitting "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading", and (3) "any act, practice or course of business which operates * * * as a fraud or deceit".

█ A civil remedy is not expressly given for a violation of these provisions but in this Circuit (and others) such remedy has been held to be available. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951).

█ Plaintiff has demanded a trial by jury and, if there be genuine issues for trial, would appear entitled to a jury trial because this is an action "at law". 15 U.S.C. § 78aa; see Loss, Securities Regulation (3d ed.), pp. 1849–1851.

Two of the defendants—H. Hentz & Co., a partnership, and William P. Green, one of the partners—move for summary judgment. Fed.R.Civ.P. 56.

The claims of the plaintiff can best be determined, not from his complaint but from a statement of his "contentions" annexed to a pretrial order made by Judge Levet and filed January 16, 1963. By such order, the pleadings were "deemed amended" to raise the issues set up by the "contentions" which are in substance as follows:

(1) that defendant Lerner, a director of Fashion Park, Inc., with the help of

Hentz, Green and other defendants, bought from List 5100 shares of Fashion Park at $18.50 per share on November 17, 1960 (Fashion Park stock was traded over-the-counter);

(2) that in a matter of weeks the stock was sold to Hat Corporation for $50 per share;

(3) that defendant Lerner was under an obligation to disclose to List anything which would have affected the value of Fashion Park stock;

(4) that the purchase from List was made without disclosing facts known to Lerner which would have affected the market value of the Fashion Park stock;

(5) the facts known to Lerner and to his "co-workers" (which must be taken to include Hentz and Green, although there is no express averment) and not disclosed to List were

a. that Lerner, a director of Fashion Park, was the prospective buyer of all or some of the 5100 shares;

b. that the stock of Fashion Park had been selling at a discount from book value largely because the controlling stockholders refused to sell, get new management, merge or reorganize Fashion Park;

c. that before November 4, 1960, the situation of Fashion Park had become "critical" because of threats from a labor union to "remove" 300 or 350 employees;

d. that on November 4, 1960, the directors of Fashion Park adopted a resolution that the corporation must be "sold or merged" and that this was an "important change"; and

e. that Hat Corporation "had expressed" an "interest" in Fashion Park and was so interested "a considerable period" before November 18, 1960 (the sale by List was on November 17, 1960).

There is no dispute as to the following facts:

List is an experienced investor who owned, among other things, 5100 shares of Fashion Park, a well known manufacturer of men's clothing with headquarters in Rochester.

About November 11, 1960, List instructed his broker, Textile Shares Corporation, to sell the 5100 shares for not less than $18 a share.

Robinson, of Textile, then began negotiations with Green, of Hentz, to sell the shares; on November 17, 1960, the 5100 shares were sold to Hentz for $18.50 per share.

Neither Textile nor List knew for whom Hentz was buying nor did Hentz or Green know for whom Textile was selling. In fact, Hentz bought the shares in the amounts indicated for the following:

| | |
|---|---|
| Lerner & Company (owned by defendant Lerner) | 4300 |
| William P. Green (Hentz partner and one of the movants) | 300 |
| Madeleine G. Kalb (daughter of William P. Green) | 100 |
| Beaver Associates (closely associated with William P. Green) | 400 |
| | 5100 |

On December 8, 1960, it was publicly announced that Hat Corporation had completed an agreement to buy from the majority stockholders their stock in Fashion Park. The purchase price was $50 per share and the same price was to be, and in fact was, offered to all stockholders of Fashion Park.

On the assertion that there was fraud by the purchasers, List claims as damages the difference between the $18.50 per share at which he sold and the $50 per share he would have shortly received from Hat Corporation.

The decision of this motion turns upon whether there is any "genuine issue" as to any of the five matters not disclosed to List and, if so, whether any such issue relates to a "material fact". Fed.R.Civ. P. 56(c).

### (a)

There is no issue as to whether movants knew that defendant Lerner, a director of Fashion Park, was the prospective buyer of most of the 5100 shares; they obviously had such knowledge and raise no question as to that fact.

### (b)

The movants knew that on and before November 17, 1960, Fashion Park stock was selling at a discount from book value. But List must have known this also; indeed, this was the reason he bought the 5100 shares in 1959. The book value of Fashion Park stock could be calculated from financial statements available to the investing public, such as those in Moody's Manual (see the "Industrials" volume for 1960, p. 1282); since Fashion Park was there reported to have some 200 stockholders, there must have been annual reports also. It is not clear whether either the movants or List knew the reason why the stock sold at a discount. List claims that this was because the controlling stockholders had been unwilling to sell their stock, or sell or merge the company. Movants deny that they knew anything about the attitude of the controlling stockholders. It does not appear significant whether movants or List or both did or did not know of the attitude of the controlling stockholders, although as experienced and informed members of the financial community they must have had a pretty good idea of the situation. The fact of real significance is that the attitude of the controlling stockholders changed and a decision was made by the Fashion Park directors on November 4, 1960 to sell or merge the company (there seems to be no dispute as to this decision or as to its date).

### (c)

The movants deny that they knew about any threats of a labor union directed at Fashion Park or that the situation of the company had been made "critical" thereby. List is not able to challenge this denial but, even if he were, it seems clear that his contention in this respect is a makeweight, is cumulative, and is not really material.

### (d)

On November 4, 1960, the directors of Fashion Park (including Lerner) adopted a resolution that the company must be sold or merged. The movants deny that they had any knowledge of such a resolution. List is not able directly to contradict them. He does point out, however, that Green was acting for Lerner, who was at the November 4, 1960 meeting and certainly knew of the resolution; that Green knew Lerner well, that they were the same sort of security buyers, and that they discussed many situations; that Green had on at least two occasions discussed the Fashion Park situation with Lerner before November 17, 1960; that on November 4, 1960—the same date as the Fashion Park resolution (and a Friday)—Beaver Associates (closely connected with Green) placed an order with Hentz for Fashion Park stock; and that on November 7, 1960 (the following Monday) Hentz for the first time appears in the quotation sheets as a bidder for Fashion Park stock. Whether at a trial the state of the evidence would be such as to require submission of this issue to the jury need not now be forecast; to dispose of it now on affidavits seems unwise and inappropriate.

In this connection, the admonitions of the Court of Appeals for this Circuit must be remembered. "A litigant has a right to a trial where there is the slightest doubt as to the facts * * *. Denial of a trial on disputed facts is worse than delay". (Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945).

"* * * where, as here, credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable. It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true. We think that Rule 56 was

not designed thus to foreclose plaintiff's privilege of examining defendant at a trial, especially as to matters peculiarly within defendant's knowledge." (Arnstein v. Porter, 154 F.2d 464, 470–471 (2d Cir. 1946))

"In conclusion we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment. This is especially true when the plaintiff must rely for his case on what he can draw out of the defendant. \* \* \* It appears to be somewhat difficult to persuade the district courts of this; but we are satisfied that it is true." (Bozant v. Bank of New York, 156 F.2d 787, 790 (2d Cir. 1946))

And in an action by a stockholder, where the situation on a motion for summary judgment had at least some similarity to that at bar, the Court of Appeals declared (Fogelson v. American Woolen Co., 170 F.2d 660, 662, 2d Cir. 1949):

"The complaint alleges that the very purpose of the proposed lump-sum payment to a pension trustee is to secure to the president his large pension free from the hazard of future business vicissitudes to which the corporation will be subject. This allegation is denied by the answer, and the denial is supported by affidavits of the directors that each director who voted for the plan exercised his best business judgment. But this denial would be refuted if the plaintiffs were able to prove that the real purpose was as alleged. Therefore a triable issue of fact exists as to whether the directors did exercise their honest business judgment or were motivated by the alleged purpose of favoring the president. It may be unlikely that the plaintiffs can prove their allegation, for such proof must be drawn largely from the directors themselves by cross-examination; but we do not think that their affidavits must be accepted as conclusive and thus preclude any trial of that issue."

We are moreover recently reminded by the Supreme Court: "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion" (United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ Having regard to these authorities (many others are to the same effect) and without expressing any opinion as to how the issue should be decided, it is concluded that the issue as to knowledge by movants of the November 4, 1960 resolution should not be decided on affidavits; if such issue be "material" the motion must thus be denied.

(e)

The facts as to the interest of Hat Corporation in Fashion Park before November 17, 1960 are not in dispute.

On November 14, 1960, a third party told the officers of Fashion Park that Hat Corporation was interested in buying the company or its shares. On November 15, 1960, the President of Hat Corporation spoke directly on the subject to the President of Fashion Park and a meeting was arranged between them for November 22, 1960.

On November 17, 1960, therefore, Hat Corporation had made no offer; it had made known a definite interest.

Movants deny that they had any knowledge on or before November 17, 1960 of the interest expressed by Hat Corporation. List is not able directly to challenge the denial but, as the decisions show, this does not necessarily mean that the denial by affidavit must be accepted for purposes of this motion. While the question here is closer than that concerning knowledge of the November 4, 1960 resolution (because fewer circumstances can be urged as throwing doubt on the denial), it nevertheless seems desirable that this issue likewise be resolved at a trial.

A strong argument can be made for plaintiff that the sale or merger decision by the board of Fashion Park on November 4, 1960 was a "material fact" within the meaning of Rule 10b–5. Among other things, it is noted that the affidavit of Green states that in a "discount" situation (such as Fashion Park was) a merger or consolidation "could cause the market price of the stock to rise". The identity of Lerner as purchaser and the interest shown by Hat Corporation before November 17, 1960 may also be strongly argued at trial to be material facts. Plaintiff ought not now to be foreclosed from making such arguments "in the light of the circumstances" (Rule 10b–5) developed at a trial.

Movants argue that, even assuming knowledge of these matters on their part, summary judgment should be granted in their favor because they were under no duty to disclose them to List. Apparently the argument is merely that the matters were not material under the circumstances shown in the papers; this argument has already been discussed. The two cases cited for movants in this connection are not in point. In the first case (James Blackstone Memorial Library Ass'n. v. Gulf M. & O. R. Co., 264 F.2d 445, 7th Cir. 1959; cert. denied, 361 U.S. 815, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959)), the decision was after trial, the stock sold had a fixed and guaranteed dividend, and the assets which were the subject of the prospective and undisclosed sale were not assets of the corporation in which plaintiffs owned stock nor did the prospective sale when consummated in any way affect the market value of plaintiffs' stock. Moreover, it was conceded that plaintiffs had obtained the full market value of their stock; their contention was merely that, had they known of the prospective sale, they could have held out for a "nuisance value". In the second case upon which movants rely (Mills v. Sariem Corporation, 133 F.Supp. 753, D.N.J.1955), the propriety of determining the action by summary judgment was not in issue because all sides had moved for summary judgment. Moreover, the

Court found that defendants were not insiders and had obtained no knowledge from an inside position and that plaintiffs had received for their stock more than its book value or market price.

 The case at bar, on the other hand, involves a director and his brokers, the movants; as to facts within their knowledge, the brokers would have the same duty of disclosure as the director insider. Fry v. Schumaker, 83 F.Supp. 476, 478 (E.D.Pa.1947); see Loss, above cited, page 1452.

Although not mentioned in his complaint and probably not adding to his argument, plaintiff would also seem entitled to rely as against movants on Section 15(c) (1) of the Act (15 U.S.C. § 78o(c) (1)) and the Rules promulgated thereunder, these provisions applying to over-the-counter transactions by brokers.

The motion, for the reasons indicated, must be denied.

So ordered.