**Mrs. E. W. LINDLEY, Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY,**
**Appellee.**

**No. 16985.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1969.

Gabe T. Vick, Weatherford, Herrick & Waltrip, and John W. Herrick, Fort Worth, for appellant.

Lancaster Smith, and Harvey L. Davis, Dallas, for appellee.

## OPINION

RENFRO, Justice.

Suit was brought against Transamerica Insurance Company by Mrs. Edwin Wayne Lindley, widow of Edwin Wayne Lindley, for Workmen's Compensation benefits. It was alleged that Lindley, while acting within the scope of his employment, sustained an accidental injury which resulted in and/or contributed to his death on December 8, 1966.

Defendant denied that Lindley suffered an accidental injury; that his death had any connection with traumatism either from the standpoint of causation or aggravation, and plead that Lindley's death was brought about by heart disease and natural causes, entirely unrelated to trauma or his employment.

Following a hearing on a motion by defendant for summary judgment the court found an absence of genuine issue of any material fact and rendered judgment that plaintiff take nothing.

By appropriate points of error plaintiff argues that defendant failed to meet its burden of proof there was no disputed fact issue, hence, the trial court erred in granting summary judgment on defendant's motion.

In reply to defendant's motion for summary judgment plaintiff presented an affidavit by Lindley's son, Melvin. In part, he stated, "On November 21, 1966, * * * my father returned from work * * *. When he came in he looked bad and told me * * * that afternoon he had been doing some pretty hard work lifting forms and pulling nails and that late in the afternoon he felt weak all over and had a headache and had to rest for about twenty or thirty minutes * * * (that he took) a couple of aspirin. * * * When he walked into the house his face was white as a sheet * * * he did not want any supper * * * his arms were so heavy and * * * aching * * *. He had been complaining of pain in his chest but around 9:00 o'clock he complained the chest pains got really severe, * * *." He arrived at the hospital about 10:00 o'clock.

By affidavit, Dr. Wilson, heart specialist, swore "Assuming that during the afternoon of November 21, 1966, * * * Lindley was engaged in work requiring that he lift weights of fifty pounds and work requiring that he 'knock down forms' (and by that I understand he was required to pull nails from the forms making the

forms so that they would become disengaged), and further assuming the statements contained in the Affidavit of Melvin Lindley to be fact, and further assuming the diagnosis and cause of death are as contained in the hospital records, it is my opinion based upon reasonable medical probability that while the late * * * Lindley was engaged in his work for his employer * * * November 21, * * * he sustained a physical harm to his body, * * * and which injury superimposed upon the probably long standing disease of arteriosclerosis contributed to and was a producing cause of his death on December 8, 1966."

D. P. Thompson testified by deposition: He is half owner of Henderson, Henderson and Thompson, contractors. Lindley was working for him on November 21, 1966. Lindley was removing forms from concrete most of the day. He used a nail bar and a hammer to pull the nails and remove the forms. The forms being used weighed 50 pounds. There was always a certain amount of jerking and tugging to get a form loose. After getting a form loose Lindley would "hand them up to someone on top."

T. L. Thompson by deposition testified: He is a brother of D. P. Thompson, and was employed by Henderson, Henderson and Thompson. He was working with Lindley on November 21. They were pouring eight by two forms and pouring concrete, putting the concrete in to hold an earthern dam. Lindley was a hard worker and on that day he was working no harder than normal. Lindley was tugging and removing forms. The forms probably weighed 50 pounds. He doesn't know how many Lindley removed that day. "He might have lifted two and he might have lifted ten." Shorty (Lindley) said he had the awfulest headache he had had in a long time. "I was sitting right beside him. I went to the pickup and got him a couple of aspirin." When he said that he was "Just standing there talking to me. * * *" He had complained of headaches before.

He made no other complaints, went right back to work. He looked normal. Lindley had the headache about the middle of the afternoon. He worked until 5:30 or 6:00. Upon quitting Lindley said he felt better.

The certificate of death shows immediate cause of death to be coronary thrombosis due to arteriosclerosis.

The complete hospital records were on file through deposition of proper custodian.

By deposition Dr. J. L. Roan testified: He saw Lindley around 9:00 on the 21st in the hospital where he was complaining of severe chest pains radiating into his arms and elbows. In the doctor's opinion he was having a heart attack. He died on December 8 with miocardial infarction. He first saw Lindley in 1962 and treated him for a blood clot on the lung. He has no history of any other illness or ailment. Leading up to his death Lindley had arteriosclerosis. The hardening of the arteries slowed down the passage of blood and set up a clot process. He has no medical evidence that Lindley's death was from overstrain or overexertion. In his opinion no other condition contributed to the cause of death; the hardening of the arteries, enclosing of the arteries was a natural process and the clot that formed on the 21st of November was a natural process of the hardened arteries that were narrow, the blood flowing through them and the clotting, and his subsequent death. He does not believe that when a person has a preexisting condition of arteriosclerosis that overstrain or overexertion can precipitate a coronary thrombosis.

Under Art. 8309, Vernon's Ann. Civ.St., a compensable injury includes not only damages or harm to the physical structure of the body but such diseases or infection as naturally result therefrom. Scott v. Liberty Mut. Ins. Co., 204 S.W.2d 16 (Tex.Civ.App., 1947, ref., n. r. e.). An injury may be compensable, even though aggravated by an existing disease, or by a disease. But of course there must be proven a causal connection between the acci-

dent and the ultimate death or disability. This connection must appear from facts proven from which such connection may be reasonably inferred. Dotson v. Royal Indemnity Company, 427 S.W.2d 150 (Tex. Civ.App., 1968, ref., n. r. e.).

In support of the summary judgment defendant contends, (1) There is no evidence of injury caused by strain or overexertion on the job, and (2) no fact issue was raised by the doctors' affidavits. These contentions are based largely on its argument that the affidavits of Melvin Lindley and Dr. Wilson are based on hearsay and are inadmissible.

The duty of a court hearing a motion for summary judgment is to determine whether there are any issues of fact raised, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. The burden of proving that there is no genuine issue of any material fact is upon the movant, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952).

The court must accept as true all evidence of the party opposing the motion which tends to support such party's contention, and give him the benefit of every reasonable inference which properly can be drawn in favor of his position. McDonald, Texas Civil Practice, Vol. 4, § 17.26, p. 1394.

The question before the court therefore, is not whether the evidence is sufficient to show that Lindley received a compensable injury on the date in question but rather did the defendant in the summary judgment proceeding conclusively show that Lindley did not sustain such an injury on the date in question.

Defendant contends that Dr. Wilson's affidavit should be disregarded because he had no personal knowledge of the facts.

The matters assumed to be true by Dr. Wilson were in evidence (the depositions of the Thompsons, etc.). For the purposes of summary judgment proceeding all statements appearing in the Thompson depositions favorable to the losing party, to wit, the plaintiff, must be accepted as true. Dr. Wilson also assumed the diagnosis and cause of death as contained in the hospital record as true. That assumption was legitimate since it was stipulated that the hospital records were correct.

Defendant seriously argues that Melvin Lindley's affidavit is based on hearsay, hence neither said affidavit nor Dr. Wilson's, which in part was based on Melvin's affidavit, should be considered.

Clearly some, if not all, of Melvin's affidavit was admissible. For example, he could testify as to the appearance and actions of his father upon returning from work on the 21st.

After the hearing the court struck from the record the affidavits by Melvin Lindley and Dr. Wilson. The court erred in so doing, and we have considered the affidavits along with all other affidavits, etc., on file when the hearing was held on the motion for summary judgment.

In a case quite similar to the instant case this court, speaking through Chief Justice Massey, on the merits, held the statements of the deceased to his son to be a part of the res gestae. Texas Employers Ins. Ass'n v. Noel, 269 S.W.2d 835 (Tex.Civ. App., 1954, ref., n. r. e.). See also Liberty Insurance Company of Texas v. Land, 397 S.W.2d 900 (Tex.Civ.App., 1965, ref., n. r. e.).

■ In determining whether the statements made by Lindley to his son should be admitted as res gestae the court must, in a hearing on defendant's motion for summary judgment, view the evidence in the light most favorable to plaintiff; must resolve all reasonable doubts in plaintiff's favor and draw all reasonable inferences in plaintiff's favor.

■ In view of the entire record, the statements, in the summary judgment proceedings, should be considered as res gestae.

■ The only person present on the day of the occurrence who testified, T. L. Thompson, is a brother of one of the owners of the company and an employee thereof. In a trial on the merits that relationship may be taken into consideration by the trier of facts as bearing on the credibility of the witness. A jury could reject his statements that were adverse to plaintiff's claim.

In Massachusetts Bonding & Ins. Co. v. Massey, 123 F.2d 447, 449 (5th Cir., 1941), the court stated: "Appellant's argument seems to be * * * that there must be direct evidence that the death was caused by, that is, connecting the death with, a particular exertion or activity. This will not do. It is sufficient if taking all the facts and circumstances, there is a reasonable basis for the conclusion that in the course of his employment, there was an exertion, the accidental and unlooked for result of which was a physical injury to his heart causing its failure and his death." See also Texas Employers Ins. Ass'n v. Shifflette, 91 S.W.2d 787 (Tex.Civ.App., 1936, writ dism.); United States Fidelity and Guaranty Co. v. Herzik, 359 S.W.2d 914 (Tex.Civ.App., 1962, ref., n. r. e.); and Texas Employers' Ins. Ass'n v. McGrady, 296 S.W. 920 (Tex.Civ.App., 1927, no writ hist.).

■ We hold that under the record it is not shown, under the meaning of "injury" as used in the Workmen's Compensation Act, that there is an absence of material fact as to whether Lindley was injured.

We hold that the affidavits, depositions, and records introduced contain some evi-

dence that Lindley was "injured" in the course of his employment and therefore summary judgment should not have been entered for the defendant.

Reversed and remanded.