**John J. LE TULLE, Jr., et al.,
Appellants,**

v.

**E. L. McDONALD et al., Appellees.**

**No. 7078.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Rehearing Denied Sept. 25, 1969.

Russell G. Ferguson, Austin, R. L. Whitehead, Sr. and Lindley Beckworth, Longview, for appellants.

B. D. McKinney, Baker, Boots, Shepherd & Coates, Houston, for appellees.

PARKER, Chief Justice.

On December 2, 1968, summary judgment was entered as follows:

"It is, therefore, ORDERED, ADJUDGED and DECREED by the Court that plaintiffs, John J. Le Tulle, Jr. and Kathryn Le Tulle McCoach, take nothing against defendants, E. L. McDonald, J. C. Lewis, Robert F. Peden, Jr., Burton B. Le Tulle and Elvin M. Landrum, in *all capacities* in which *they* are sued; that *this* case is dismissed with prejudice; and that all costs accrued herein are taxed against plaintiffs, for which let execution issue." (Emphasis ours.)

The parties will be designated by name or as in the trial court.

The Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. Sup., 1965) set forth the rules relating to summary judgments. Omitting the citation of authorities found in the opinion, we tabulate these rules:

"Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[a] "The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. * * *

[b] "* * * the evidence must be viewed in the light most favorable to the party opposing the motion. * * *

[c] "If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted.

[d] "All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. * *

[e] "Evidence which favors the movant's position is not considered unless it is uncontradicted.

[f] "If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, *unless* it is clear, direct and positive *and* there are no circumstances in evidence tending to discredit or impeach such testimony. * * *

[g] "This exception [Subdiv. (f), supra] is especially true where the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. * * *

[h] "After all the evidence has been sifted in this manner, the Court must determine whether the movant is entitled to a judgment as a matter of law."

Tested by these rules, the summary judgment granted in this case cannot stand.

Defendants have points of error as follows:

### "FIRST POINT

"The error of the court in granting summary judgment in favor of defendants in all of the capacities in which they were sued, when the releases relied on as evidence contained contingencies on which there is no evidence that these contingencies have been complied with, and when such releases only release defendants in their capacities as trustees.

### "SECOND POINT

"The error of the court in granting summary judgment in favor of defendants, when defendants' summary judgment affidavits were fatally defective.

### "THIRD POINT

"The trial court erred in refusing to hear and consider plaintiffs' motion for discovery when all motions had been previously set for hearing on a certain day designated.

### "FOURTH POINT

"The trial court erred in rendering summary judgment for defendants, when plaintiffs' pleadings, reply to motion for summary judgment, affidavits and summary judgment evidence, *which must be taken as true*, raised numerous disputed genuine material fact issues."

In their original petition, plaintiffs sued E. L. McDonald, J. C. Lewis, Robert F. Peden, Jr., individually and as Trustees un-

der that certain Trust agreement, of record in Vol. 172, page 108, of Matagorda County Deed Records, and that certain trust under the will of J. J. Le Tulle, Deceased, probated under Cause Number 1682, in the Court of Matagorda County; and Burton B. Le Tulle and Elvin M. Landrum, individually and as Trustees under the above mentioned trusts and as independent executors under the will of J. J. Le Tulle, Deceased. Plaintiffs alleged that they were two of the beneficiaries having "justiciable interests, under that certain Trust Agreement executed by John J. Le Tulle, dated July 29, 1946, recorded Vol. 172, pages 108–112, of Matagorda County Deed Records, known as, and hereinafter referred to as Trust No. 1; and under that certain trust created in the last will and testament and codicil of J. J. Le Tulle, Deceased, being the same person as John J. Le Tulle, admitted to probate in the County Court of Matagorda County, Texas, Cause Number 1682 on the Probate Docket, known as, and hereinafter referred to as Trust No. 2, in both of which said trusts defendants were named trustees, accepted such trusts and acted as such trustees; certified copies of which said Trust No. 1 and Trust No. 2 will be offered in evidence at the hearing hereof."

In Paragraphs III and IV, plaintiffs alleged in substance that the trusts had terminated and that the defendants had failed to prepare and deliver to each beneficiary a final account showing all income and disbursements during the continuance of the trusts; that plaintiffs were the owners of an undivided ⅟₁₁th each of all the real property on hand in each of the two trusts on their termination on July 29, 1966, "of which there is no dispute"; and that plaintiffs were also entitled "to an undivided one-eleventh (⅟₁₁th) interest each in all income of said Trust No. 1 after deducting properly chargeable expenses, together with an undivided one-eleventh (⅟₁₁th) interest each in other cash receipts properly chargeable as corpus in Trust No. 1; together with an undivided one-eleventh (⅟₁₁th) interest each in all personal property of the corpus of said Trust No. 2

and the net income therefrom after the death of the life beneficiary, Lela Le Tulle, which occurred April 7, 1966; all of which may be shown by an accounting plaintiffs are entitled to be [sic] the terms of said Trusts Nos. 1 and 2, and by the provisions of Article 7425b–24, Section A of the Revised Civil Statutes of Texas."

Plaintiffs prayed that they have an accounting and that upon final hearing here, "the Court, by such accounting, enter judgment fixing and determining plaintiffs' interests in the personal property and the amounts of money due plaintiffs under said trusts, together with costs of suit and such other relief as plaintiffs may be entitled to receive at law or in equity."

The defendants, in their original answer, admitted that the trusts formerly existed, that defendants were trustees, and that plaintiffs were among the beneficiaries of those trusts, but *denied all other allegations made in the petition.* The remainder of defendants' original answer consists of:

"The purported causes of action asserted against these defendants were released by plaintiffs in written instruments executed by them on March 23, 1967."

In a supplemental petition, plaintiffs plead that defendants were estopped from relying upon the alleged releases because the same were "unilateral", lacked consideration and that "no intelligible accounting and report of the condition of said Trusts" had ever been furnished to plaintiffs and the plaintiffs were not acting upon full information as required by Article 7425b–23, V.A.C.S. The supplemental petition contained further allegations that the reports which were furnished were "ambiguous and unintellible" and that upon the trial it would be shown "by unimpeachable evidence" that certain property had been treated as community property when it passed by the terms of the decedent's will under which the surviving wife had elected to take.

The defendants then filed their verified motion for summary judgment, supported by affidavits in proper form, to which were attached as Exhibits A and B certified copies of the releases executed by the plaintiffs herein. The releases are lengthy, and we recite only the highlights thereof. In the preamble are found recitations: (a) as to the creation of the two trusts by John J. Le Tulle, (b) the termination thereof by their own terms, (c) the delivery to the beneficiaries of "a full and complete accounting and report of the condition of said Trusts with respect to the property income and expenditures," and (d) that the trustees are desirous of winding up the trusts and confirming the title to the property covered by said trusts in the respective beneficiaries and the desire of the trustees to obtain "a full and complete release and discharge with respect to their performance as Trustees of said Trusts."

The operative part of the releases, reciting a cash consideration of ten dollars and other good and valuable consideration paid by the trustees and the "further consideration of the long and faithful services of said Trustees", contain a full and complete release of the trustees as such, but do not release the executors. They recite that the beneficiaries "do accept as true and correct the submitted final accounting and report" mentioned in the preamble of the release. It was next provided that the releases would be executed in counterparts but would not be binding upon the beneficiaries until all counterparts had been executed.

To this motion for summary judgment, the plaintiffs replied by their affidavits, asserting that the releases were unilateral in that the only considerations therefor were: (a) defendants' promises to partition the property under the two trust agreements "(which has not been done)"; (b) "the inducement of plaintiffs by defendants to execute and deliver an agreement, contemporaneously with such releases to partition all real estate under such trusts, which has not been done;" and (c) the delivery by defendants to plaintiffs of a "fraudulent,

incomplete and ambiguous final account" which did not fully inform the plaintiffs of the conditions of the trusts; and, not being in compliance with Article 2425b–23 of the Texas Trust Act, created an estoppel on the part of the defendants to rely thereon.

There were further factual assertions contained in the affidavits of plaintiffs that a certain specific parcel of land had been mishandled by the trustees.

█ Certified copies of the will of J. J. Le Tulle and a codicil thereto appear in the transcript. It is stipulated that they were "presented to the court during the course of arguments and considered by the court in its determination of the defendants' motion for summary judgment," and should be included in the transcript. The will and codicil were not included in affidavits supporting any motion for summary judgment, nor were they attached "thereto or served therewith." Under Rule 166–A, these two instruments are not entitled to consideration in a summary judgment hearing. State v. Easley, 404 S.W.2d 296, 297 (Tex.Sup., 1966).

The trust agreement executed by John J. LeTulle, dated July 29, 1946, is not in the record. It is admitted by both parties that the trusts have terminated. Nothing in the record indicates the names of the other beneficiaries of the respective trusts or the respective interest of each beneficiary in each trust. The record does establish that in addition to plaintiffs there are other beneficiaries of the trusts. The defendants denied that the plaintiffs owned the respective interests in the respective trusts as alleged in plaintiffs' petition.

█ The defense of release, as urged in *this* proceeding by defendants, must and should fail because a condition precedent to their becoming binding upon the plaintiffs executing same is that all other beneficiaries execute similar counterparts. In the record are certified copies of the counterparts signed by each of the plaintiffs.

However, defendants had a further burden under Rule 54, in connection with Rule 94, which they have not discharged, either as to pleading or proof, that all conditions precedent have been performed or occurred. Plaintiffs did not deny they each executed the releases, but, under this record, they were never called upon to admit or deny the conditions precedent in the releases were performed or occurred. Genuine issues as to the material fact of execution of all of the counterparts existed and the trial court was not authorized to render the summary judgment. Baker v. Baker, 143 Tex. 191, 183 S.W.2d 724 (1944); Perry v. Little, 377 S.W.2d 765, 769 (Tyler, Tex.Civ. App., 1964, error ref. n. r. e.); Twin City Bowling Lanes, Inc. v. C.I.T. Corporation, 376 S.W.2d 94 (Ft. Worth, Tex.Civ.App., 1964, no writ); Rule 94 and Rule 54, T.R. C.P.; Southwestern Associated Tel. Co. v. City of Dalhart, 254 S.W.2d 819, 825 (Amarillo, Tex.Civ.App., 1952, error ref. n. r. e.).

We make no determination of the validity or invalidity of the release, either as to substance or as to form, such being reserved for determination by the trial court after a full inquiry into the facts upon remand.

Defendants contend that they proved that each and all the beneficiaries signed the releases, by the following paragraph in the affidavit of John J. Le Tulle, Jr.:

"On March 23, 1967, the beneficiaries under Trusts Nos. 1 and 2, described in Plaintiffs' Original Petition, were requested to appear at the office in Bay City, Texas, of E. L. McDonald, one of the trustees under said trusts and one of the defendants in the foregoing cause, for the purpose of distributing the property and money of said trusts Nos. 1 and 2."

All of the beneficiaries were invited, but the only ones present and signing, according to this affidavit, were the plaintiffs.

The judgment entered in this cause released the defendants "in all capacities in which they are sued." The releases signed by plaintiffs did not release Burton B. Le Tulle and Elvin M. Landrum as independent executors under the will of J. J. Le-Tulle, Deceased. From the record, we cannot determine whether the independent administration by the independent executors was closed or whether closed before or after §§ 151 and 152 of the present Probate Code became applicable. Clearly it is erroneous under this record for the judgment to release the independent executors.

Attached to plaintiffs' reply to defendants' motion for summary judgment, Exhibits A, B, and C contained substantial parts of the final account of the trustees furnished to the plaintiffs prior to their signing the releases. It is an incomplete and ambiguous final account. No attempt is made therein to in any manner inform the plaintiffs as to details in the J. J. Le Tulle Trust No. 1 Account, the J. J. Le Tulle Trust No. 2 Account, or the Trusts Savings Accounts. On the contrary, the report states there is no accounting as to them. In the deposition of John J. Le Tulle, Jr., he states he had his attorney, Dingle, and an accountant confer with the trustees and their representatives. Several errors were discovered which the trustees admitted were erroneous. They were unable to find many records and some were lost. The complete report furnished by the trustees is not in our record and the determination of the sufficiency of the report, either legally or factually, should not be influenced by our views based upon an abbreviated and truncated record.

One of the irregularities discovered during this conference of 1966 was that money from Trust No. 1 was used to purchase real estate, with the income therefrom placed to the credit of Trust No. 2. As to the lands purchased with money from Trust No. 1 with the income being credited to Trust No. 2, Dingle "recommended that the Trustees of Trust No. 1 and Trust No. 2 pass title by deed to each beneficiary of Trust No. 1 to those lands purchased with

funds from Trust No. 1." There is no proof such deeds were made.

In the latter part of Dingle's report, dated August 31, 1966, analyzing the results of the conference, it was his finding that several substantial items of money were credited to the wrong account.

John J. Le Tulle, Jr. testified in his deposition, 102 pages plus exhibits, that he and his brothers and sisters paid $10,000.00 for and on behalf of the trustees to a sister, Mignon, because of mismanagement of the estate, which payment the trustees forced them to make, telling them they would fight her claim and the lawyers would get it all. Le Tulle claims that he was paying for the trustees' damages his sister alleged the trustees had done to her as a beneficiary. She had the same interest under the two trusts as each of plaintiffs. This was not a compromise. Le Tulle was an interested witness, but his evidence is clear, direct, and positive. There are no circumstances in evidence tending to discredit or impeach his testimony. The defendants and their counsel had the means and opportunity of disproving his evidence if it were not true, and failed to do so.

Plaintiffs plead fraud and estoppel as to the final account. There are genuine issues as to these material facts. Also, there is a genuine issue as to the material facts as to whether or not there was a failure of consideration for the execution of the releases by plaintiffs, as well as for any compromise between the trustees and plaintiffs.

We are convinced, from a careful review of this unsatisfactory record, that there are material genuine issues of fact which are disputed, precluding the entry of the summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Lindley v. Transamerica Insurance Company, 437 S.W.2d 371, 374 (Ft. Worth, Tex. Civ.App., 1969).

Plaintiffs' points 1 and 4 are sustained.

Plaintiffs, in their second point of error contend that defendants' summary judgment affidavits were, fatally defective. There is no merit to this point of error and it is overruled.

As to point three, the matter complained of is not material in view of the disposition we make of this appeal.

Reversed and remanded for trial upon the merits.

STEPHENSON, Justice (dissenting in part).

I concur with the majority in holding this case must be reversed and remanded because genuine fact issues were raised as to whether plaintiffs had been given full information as a basis for the releases as required by Article 7425b–23, V.A.C.S., and also as to whether there had been a failure of consideration for the releases because the personal property was not distributed and deeds delivered. I also agree the judgment was erroneous in holding the defendants were released in all capacities.

I do not agree that plaintiffs raised an issue as to whether all of the beneficiaries executed counterparts of the releases so as to make such releases operative. Defendants' answer and motion for summary judgment with the releases and affidavits attached to them plead the releases in bar. Plaintiffs filed an answer to the motion for summary judgment and the deposition of plaintiff, John Le Tulle, Jr., was offered on the hearing of such motion. There is not the slightest suggestion in any manner that plaintiffs were contending the releases had not become effective because counterparts were not executed. The trial court had no opportunity at any point to pass upon that question. In fact, defendants' first point of error, as shown above, which the majority opinion construes as raising this question, is multifarious and should not have been considered by this court under Rule 418.

Rule 94 requires a party to specially plead any matter constituting an avoidance. It has been held by the Supreme Court of Texas that a plea that a written release was executed and delivered subject to an unfulfilled condition was a plea in avoidance. Hall v. Rawls, 141 Tex. 235, 171 S.W.2d 324 (1943). Further, the record before us shows these plaintiffs received checks after executing the releases. Under the general rule, these plaintiffs would have been required to tender the amount of money they received, in order to escape the binding effect of the releases.