**MInnie P. GARCIA, Appellant,**

v.

**H. E. BUTT GROCERY COMPANY,**
**Appellee.**

**No. 581.**

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 10, 1970.

R. E. Lopez, Jr., Alice, for appellant.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, George G. Brin, Corpus Christi, for appellee.

OPINION

SHARPE, Justice.

This appeal is from a summary judgment that plaintiff-appellant take nothing against the defendant-appellee.

Plaintiff sued defendant for damages on account of personal injuries caused by her falling on a concrete block used as automobile wheel stops installed by defendant on a parking lot adjacent to its retail grocery store in Alice, Texas. Plaintiff alleged in substance the following: On March 20, 1969 plaintiff was a business invitee of defendant, being a passenger in an automobile which parked on said lot. She was leaving the automobile when she tripped over a concrete block, causing her serious injuries. Plaintiff also alleged that defendant was negligent in several respects proximately causing her injuries, as follows: In failing to provide a safe place and surface on which to descend from an automobile; in failing to provide a safe clearance from said concrete blocks on which its customers could descend from automobiles in a safe manner; in installing and maintaining the concrete blocks at angles and in the manner situated on the parking lot in question; in failing to warn of the concrete blocks and particularly that they would overlap into the areas used

by passengers when exiting from automobiles; and in failing to paint the concrete blocks so as to warn invitees.

Appellant contends that the trial court erred in granting summary judgment because the pleadings and depositions on file showed the existence of a genuine issue of material fact concerning the negligence of appellee.

By two counterpoints appellee asserts in substance that the trial court properly granted its motion for summary judgment because: (1) That under the undisputed state of the evidence no dangerous condition (or one involving an unreasonable risk of harm) existed upon defendant's premises on the occasion in question, and for such reason defendant was entitled to judgment as a matter of law; and (2) that by virtue of the open and obvious nature of the condition complained of by plaintiff, defendant owed no duty to plaintiff and was entitled to judgment as a matter of law.

The summary judgment record consists of plaintiff's original petition, defendant's first amended original answer, defendant's motion for summary judgment, plaintiff's answer to defendant's motion for summary judgment, and the oral depositions of plaintiff, Minnie P. Garcia, Margarita Garcia, daughter-in-law of plaintiff, and John Worsham, an employee of defendant.

Mrs. Minnie P. Garcia, the plaintiff-appellant testified by deposition in substance as follows: On the date of her accident she had ridden in the car with Mrs. Margarita Garcia, her daughter-in-law, to defendant's store in Alice, Texas, with the intention of purchasing groceries. The weather was clear. The car was parked in one of the marked spaces on the defendant's lot. When appellant descended from the passenger side of the front seat of the car she tripped over a concrete form. Appellant had not been to this particular parking lot before. She did not see the concrete form when the car pulled up to the parking space. The car door was open at the time appellant fell. Counsel for appellee drew a diagram of the scene and used it in connection with certain questions propounded to appellant. The concrete stops were indicated by a series of lines marked "C.S.". Lines were also drawn to indicate the yellow stripes for parking spaces. Appellant said there was another car parked on the right side next to her. The diagram showed the concrete stops were installed at an angle next to Almond Street so that, facing it, the right end of the stop is closer to the street and the left end is farther away from it and next to an area in the adjoining parking space where the right side and front door of a parked car would be located. Appellant said that the concrete blocks were not painted and the color was "plain concrete." The concrete stops are light in color and the parking lot itself is dark in color. She further testified as follows:

"Q * * * Did you see this concrete thing when you opened your door?

A I didn't see it. No, I didn't see it.

Q Now, you could have seen it, could you not? I mean, if you had looked down on the ground?

A No, because it was on the other side of the door (demonstrating ducking head)."

* * * * * *

"Q All right. I understand that you didn't see it at all.

A No.

Q Did you?

A No, not at all.

Q And certainly if you had seen it you wouldn't have fallen on it?

A Oh gosh, I didn't want to lose my leg, as I have.

Q I'm not arguing with you, at all, now—

A No, that's all right.

Q —about you not seeing it, all I am asking you is that you could have seen it, if you had thought to look down—

A No.

Q —isn't that true?

A No.

Q It wasn't hidden from you in any way, was it?

A Yes.

Q And you did see it after you fell over it, didn't you?

A Yes, I sure did see it. Now I'm seeing them everywhere.

Q All right. Did you fall after taking a step out of the car, or did you first—

A No, I took just a step out of the car.

Q You got out, and took a step, and fell over it then?

A Yes.

Q You were not holding onto the door of the car then, were you?

A No. No, I don't stay there holding the door."

Appellant also testified that she suffered injuries from the fall which included a broken knee; that the doctor put her leg in a cast, and that she was unable to get around for six weeks to two months, and that she was in the hospital for twenty-two days.

Mrs. Margarita Garcia testified by deposition in substance as follows: She is the daughter-in-law of plaintiff-appellant and was present when the latter's oral deposition was taken. On the date of the accident she was driving the car in which her mother-in-law was riding. The witness saw the concrete stop in front of her car and put the wheels against it. She did not see the concrete stop on which her mother-in-law fell until the witness picked her up and put her back in the car. The witness testi-fied to some facts and also her opinion as to whether her mother-in-law could have seen the concrete stop over which she fell along with some conclusions as to the cause of the fall. Her testimony concerning the accident is largely shown by the following:

"Q * * * Now, when you went around there, Mrs. Garcia, to pick up your mother-in-law, did you notice the concrete stop being in the approximate position as indicated here in red on this Defendant's Exhibit No. 1?

A Well, I saw, you know, when I picked her up, and when we tried to open the door, you know, I noticed it was in front, you know, of the door. That's why she fell down, because, I mean, it was right almost, you know, in the middle between the door, you know.

Q All right. Now let me show you here on this Defendant's Exhibit 1, so that we will keep it straight, and, with ball point pen here, I am marking a little line across the side of the car, and that would be the opening in the door.

A Mm hmm.

Q And this line coming out here would be the door itself. In fact, just so there is not any confusion about it, I will just write 'door' on it. Then, if I have understood your mother correctly, the portion of this concrete stop that she fell over, was that part that extended under the door itself, and right there in front of her as she got out of the car.

A Yes.

Q Is that right?

A (Up and down nod.)

Q Now, is that your recollection of it, too?

A Yes.

Q As to where it would be?

A Yes.

Q Now, I asked her if she could have seen it had she looked down at the ground, and, of course, she said she could have. To your knowledge, was there anything obscuring it? Any reason why she couldn't have seen it?

A Well, I mean, she's too small, I mean, she's not very tall like I am. I mean, I could have seen it, but, I mean—if I would look out, you know.

Q You're talking about looking out the car window?

A Yeah.

Q But I'm talking about after she opened the door.

A Well, no, because when she get down, well, she just would look out, you know, and see it. I mean, if she had, well, she could have been more careful.

Q She could have seen it if she had looked down after she opened the door?

A Yes, but it was right, you know, where she couldn't see it.

Q All right. After the door was open, of course, it was right there by the side of the car? Is this right?

A What do you mean?

Q This concrete stop.

A Yeah, it was—

Q Right beside the car?

A Beside the door."

John Worsham testified by deposition in substance as follows: He had been employed by the defendant Grocery Company in Alice for about three and one-half years. He was present when the depositions of Mrs. Minnie P. Garcia, the plaintiff, and Mrs. Margarita Garcia were taken. He was not a witness to the accident in question but had been told about it. The parking lot was there when he came to Alice, but it was restriped and the spaces reallocated afterward. The concrete blocks were also there and if they are not the same they are some just like them. The concrete blocks have not been painted to his knowledge. The parking lanes are slanted to facilitate the cars backing out. The concrete blocks are usually not as wide as the lane in which they are installed. The blocks usually sit inside the lines of the parking space. The concrete block does not reach completely up to the door of the automobile next to it. Worsham said he believed the concrete blocks are about seven feet long. He also said they are seven feet by 7½ inches by 8 inches. He believed the parking slots were eight feet wide but he was not sure. He also said the slots were 8 or 8½ feet wide. Appellee placed the concrete blocks there. Worsham knew they were not painted. He didn't believe that he had heard of an accident where someone tripped on the blocks. A lady fell in the parking lot about two years ago but he didn't think it was over the sort of thing as the blocks. He expressed opinions and conclusions that when a car door was opened a concrete block would be plainly visible "I would think," and "I wouldn't see how anyone would have trouble seeing the blocks there as large as they are."

The applicable summary judgment rules are stated by our Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.Sup.1965). Such rules have been tabulated, omitting citation of cases, by the Beaumont Court of Civil Appeals in LeTulle v. McDonald, 444 S.W.2d 794, 795 (Tex.Civ.App., 1969, wr.ref. n.r.e.) as follows:

" 'Rule 166-A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(a) 'The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. * * *

(b) '* * * the evidence must be viewed in the light most favorable to the party opposing the motion. * * *

(c) 'If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted.

(d) 'All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. * * *

(e) 'Evidence which favors the movant's position is not considered unless it is uncontradicted.

(f) 'If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, *unless* it is clear, direct and positive *and* there are no circumstances in evidence tending to discredit or impeach such testimony. * * *

(g) 'This exception (Subdiv. (f), supra) is especially true where the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. * * *

(h) 'After all the evidence has been sifted in this manner, the Court must determine whether the movant is entitled to a judgment as a matter of law.' "

In Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752 (Tex.Sup.1970) the Court held in part as follows:

" * * * The basic duty of a landowner or occupier to his invitees is to exercise ordinary care to keep the premises in a reasonably safe condition. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.Sup.1963); Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393 (1954); Carlisle v. J. Weingarten, Inc., 137 Tex. 200, 152 S.W.2d 1073, 1074 (1941); Wal-green-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625, 628–629 (1941); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 615, 23 A.L.R.2d 1114 (1951). Thus, the first steps in the proof of an injured invitee-plaintiff's case are to show (1) that the owner or occupier created or maintained on the premises some condition involving an unreasonable risk of harm, *McKee*, 271 S.W.2d at 393; and (2) that the plaintiff's injury resulted from his contact with that condition. Additionally, because the owner or occupier is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed, the plaintiff must show as a matter of law or through a finding of fact that the owner 'knew or should have known of the existence of the condition and that he should have appreciated its dangers.' 271 S.W.2d at 395."

In Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963) the court discussed the "no duty" doctrine as follows:

"The 'no duty' doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. Smith v. Henger, 148 Tex. 456, 226 S.W. 2d 425, 20 A.L.R.2d 853 (1950); Genell, Inc. v. Flynn, [163] Tex. [632], 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to

warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof. This Court said in Harvey v. Seale, 362 S.W.2d 310 (1962):

'And there is no duty whatsoever with respect to conditions that are so open and obvious, with dangers therein so apparent, that the same are or should be known and appreciated by the visitor. One who has no right to enter except by virtue of the landowner's consent can remain off the premises if he does not wish to subject himself to the risk of injury from such conditions. Where he has an opportunity to exercise an *intelligent choice* as to whether the advantage to be gained by his entry is sufficient to justify his incurring the risk, the landowner owes him no further duty to protect him from harm'. (Emphasis throughout is here added.) 362 S.W.2d at 312–313.

"So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a duty to take reasonable precautions to warn him or protect him from such danger, i. e., the plaintiff must negative 'no duty.' This is the 'no duty' referred to in the cases. Academically, it may be a rather clumsy concept, but it is still the law. Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948)."

When we consider and apply the rules applicable to summary judgments as well as those governing a landowner-invitee case we must hold that appellee has not carried its burden to establish as a matter of law that there is no genuine issue of fact as to at least one of the essential elements of the plaintiff's cause of action.

This holding applies to each of the ultimate issues involved in the plaintiff's cause of action including those covered by the "no duty" doctrine. Recent Supreme Court decisions have reiterated and emphasized the nature of the burden which the movant must discharge in a summary judgment case. See Torres v. Western Casualty and Surety Company, 457 S.W.2d 50 (Tex. Sup.1970); Glenn v. Prestegord, 456 S.W. 2d 901 (Tex.Sup.1970); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. Sup.1970). The summary judgment evidence in this case reflects many uncertainties concerning the physical facts relating to the parking lot in question and particularly concerning the location and condition of the concrete blocks used as automobile wheel stops and the circumstances under which a person alighting from a car would encounter them. It is apparent that the material facts may be more fully and accurately developed. Of the three depositions in this case, one was by the party plaintiff, the second by an agent of appellee who was an interested witness, and the third by a relative of the plaintiff whose testimony did not serve to eliminate the material issues of fact. The cases relied on by appellee do not support the position that summary judgment was proper in this case. Although there are some factual distinctions, the case of Chapman v. Parking, Inc., 329 S.W.2d 439 (Tex.Civ.App., San Antonio, 1959, wr. ref. n. r. e.) supports appellant's position here that the summary judgment should not have been granted

We do not express an opinion as to whether on a conventional trial the evidence disclosed by the present record would or would not support findings on the essential elements of liability in favor of plaintiff. We simply hold that the defendant did not carry its burden of establishing as a matter of law that there is no genuine issue of material fact as to at least one of the essential elements of the plaintiff's cause of action.

The summary judgment of the trial court is reversed and the cause is remanded for new trial.