**FOGELSON et al. v. AMERICAN WOOLEN CO, Inc., et al.**

No. 61, Docket 21090.

United States Court of Appeals
Second Circuit.

Nov. 10, 1948.

Schwartz & Frohlich, of New York City (Louis D. Frohlich, Herbert P. Jacoby and Lawrence C. Gibbs, all of New York City, of counsel), for appellants.

Patterson, Belknapp & Webb, and Hays, Wolf, Schwabacher, Sklar & Epstein, all of New York City (Robert P. Patterson, Edwin D. Hays, Milton Klein, Ambrose L. Cram, Jr. and Jules H. Enrich, all of New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought by two stockholders of American Woolen Company, Inc., against the corporation and four of its directors to enjoin the defendants from putting into effect a proposed "Retirement Income Plan" for the corporation's salaried employees.[1] Federal jurisdiction rests upon diversity of citizenship.

The proposed plan, which is set forth in the complaint, contemplates that it shall be put into effect as of January 1, 1948, fixes the retirement age at 65, and sets up a percentage formula for determining the "retirement income" or pension to be paid annually by the corporation to an employee after his retirement. The percentage formula takes into account the employee's salary and length of service both before and after the effective date of the plan. The plan is to be administered by means of a pension trust and it is proposed to pay into this trust at once $4,657,292 to fund that part of the pensions based on past services of employees. The president of the corporation will be eligible for retirement on June 1, 1949, and under the plan will thereafter be entitled to receive an annual pension of $54,220 for life. The complaint alleges, upon information and belief, that such a pension is "excessive and unconscionable"; that the purpose of funding past service benefits by a single payment is to insure to the president that he will receive such pension irrespective of business vicissitudes which may hereafter overtake the corporation; and that the proposal to fund past service benefits by a single payment, instead of in instalments over a term of years, disregards the custom and usage of other companies with respect to retirement income plans, and disregards the inadequate cash position of the defendant which during 1947 obtained a bank loan of $10,000,000 that still remains unpaid. The prayer of the complaint is for an injunction against setting up the aforesaid Retirement Income Plan and from paying out to any pension trustee the said sum of $4,657,292.

After filing its answer denying the charges of improper motive and asserting that the directors promulgated the proposed plan in the exercise of their honest business judgment and that the majority stock-

---

[1] None of the individual defendants was served with process or has entered his appearance.

holders, as well as the Commissioner of Internal Revenue, have approved it, the defendant moved under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. for summary judgment on the ground that the complaint fails to state a claim upon which relief can be granted because the plaintiffs seek to enjoin corporate action with respect to a matter of internal management upon which the business judgment of the directors is conclusive. The motion was heard upon the pleadings, together with supporting and opposing affidavits, and was granted, the district judge expressing the opinion that there was "no colorable reason to disturb the exercise by the directors of their judgment and discretion in the discharge of their duties." The sole issue upon the appeal is whether the case should have been sent to trial rather than decided summarily.

The appellants do not contend that the defendant cannot lawfully establish a retirement pension plan for its salaried employees; their objection is to three specific features of the proposed plan, which they assert will cause the plan, if put into effect, to constitute a waste of corporate assets. These features are: (1) the proposal to fund past service benefits by a single payment instead of by instalment payments extending over a term of years; (2) the failure to set a reasonable "ceiling" in dollars, limiting the maximum pension payable annually to any one individual; and (3) the proposal to pay the president so large an annual pension after his retirement.

■ Courts are properly reluctant to interfere with the business judgment of corporate directors; they do so only if there has been so clear an abuse of discretion as to amount to legal waste. See McQuillen v. Nat. Cash Register Co., 4 Cir., 112 F.2d 877, 884, certiorari denied 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed. 450. In setting up a retirement pension plan, the decision of the directors to fund past service benefits by a single lump-sum payment rather than by instalment payments over a term of years, will normally be conclusive. So also will their decision as to the desirability of applying a percentage formula uniform-

ly to all employees' salaries without imposing a limitation in dollars upon the maximum pension payable to high salaried officers. In the case at bar the adoption of these features results in giving the president an annual pension for life of more than $54,000 a year while the employee receiving the next largest pension will receive only $7,285. The complaint alleges that the very purpose of the proposed lump-sum payment to a pension trustee is to secure to the president his large pension free from the hazard of future business vicissitudes to which the corporation will be subject. This allegation is denied by the answer, and the denial is supported by affidavits of the directors that each director who voted for the plan exercised his best business judgment. But this denial would be refuted if the plaintiffs were able to prove that the real purpose was as alleged. Therefore a triable issue of fact exists as to whether the directors did exercise their honest business judgment or were motivated by the alleged purpose of favoring the president. It may be unlikely that the plaintiffs can prove their allegation, for such proof must be drawn largely from the directors themselves by cross-examination; but we do not think that their affidavits must be accepted as conclusive and thus preclude any trial of that issue. See Arnstein v. Porter, 2 Cir., 154 F.2d 464, 469–471; Winkelman v. General Motors Corp., D.C.S.D.N.Y., 39 F.Supp. 826, 835.

■ The appellee argues that the plan itself disproves the allegation that the purpose of funding past service benefits in a single payment was to protect Mr. Pendleton's pension against future uncertainties, since section 15 of the plan provides that on the happening of certain contingencies the pension payable to him may be substantially reduced. These provisions of the plan will make more difficult proof of the plaintiffs' allegation as to the directors' purpose, but we do not think they remove the issue so completely as to prevent any inquiry into the alleged purpose.

■ The situation is similar with respect to the directors' decision to place no dollar limitation on the maximum pension payable

under the percentage formula. The plaintiffs' affidavit asserts that such a limitation is customary, and it lists numerous large corporations which have imposed a limitation of $25,000 or less in their retirement pension plans. In reply the defendant submitted an affidavit by Mr. Denker, of Johnson & Higgins, who states that the present trend of corporate pension plans "is away from the fixing of low maximums on retirement incomes" and cites instances where the operation of the percentage formula results in retirement incomes for particular individuals in excess of $50,000 per year. Of course, the practice of other companies is not conclusive, but it is relevant; and obviously it cannot be tried out upon affidavits. For example, it would be important in any given instance to find out whether funds for the pensions were in part contributed by the pensioners. Moreover, there is in the case at bar a most startling disparity between the president's pension and that of even the nearest of the other officers and employees, and we should hesitate to hold that the courts are forbidden even to inquire into its justification but must accept without investigation the judgment of the directors.

■■ A retirement plan which provides a very large pension to an officer who has served to within one year of the retirement age without any expectation of receiving a pension, would seem analogous to a gift or bonus. See Nemser v. Aviation Corp., D.C.Del., 47 F.Supp. 515, 517. We have it on the authority of Rogers v. Hill, 289 U.S. 582, 591, 592, 53 S.Ct. 731, 77 L. Ed. 1385, 88 A.L.R. 744, that the size of a bonus may raise a justiciable inquiry as to whether it amounts to spoliation or waste of corporate property. The tenable reasons for the adoption of a retirement plan are that it serves as an inducement to competent personnel to accept employment and retain it until the retirement age, and also

accords with present day notions of justice to superannuated employees. It would seem that the second consideration can have little weight in the case of an officer whose salary for an undisclosed number of years was $100,000 and for the year immediately preceding adoption of the plan, $151,250. We do not say that a pension of $54,220 to such an officer cannot be justified, but, if justified, it must be because it is in the interest of the employer to insure to even those who receive so high a salary that they may retire on a pension computed upon the same percentage formula as the lowest salaried employees. Whether it will be possible upon Mr. Pendleton's retirement to obtain the services of an equally competent president without promising him a retirement pension which might amount to as much as $54,000 a year has a bearing on the reasonableness of the plan the defendant proposes to put into effect. The affidavits are silent as to the necessity of promising any such sum in order to obtain equally efficient service in the future. Admittedly it was not necessary in order to obtain Mr. Pendleton's valuable services during the past thirty years. Since the size of a bonus may raise a justiciable inquiry as to whether it amounts to spoliation or waste, we are not prepared to say that providing a pension whose present value, as we compute it, is more than $450,000, is so clearly the exercise of proper business judgment that courts may not even allow the issue to be tried. We intimate no opinion as to how it should be decided; but we submit that nothing would more tend to weaken confidence in the courts than to hold that the decision of a board of directors to give to a retiring president so large a sum is beyond the reach of any scrutiny whatever.

Accordingly the judgment must be reversed and the cause remanded for trial. It is so ordered.