**PAN AMERICAN INSURANCE COMPANY,
Appellant,**

v.

**Apolonio SANTOS, d/b/a Santos Transfer
Company, et al., Appellees.**

No. 13034.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 10, 1956.

Rehearing Denied Nov. 14, 1956.

Lewright, Dyer, Sorrell & Redford, J. M. Burnett, Corpus Christi, for appellant.

J. G. Hornberger, Raymond Goodman, W. W. Allen, Oscar Laurel, Laredo, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Apolonio Santos, doing business as Santos Transfer Company, against Pan American Insurance Company, a corporation duly organized under the laws of Texas, with permission to issue in the State of Texas policies commonly known as automobile liability insurance policies. (At one time his father and brothers were associated with Apolonio Santos in the transfer business, but they withdrew and, at least for the purposes of this opinion, the interest of the father and brothers can be disregarded.) Santos is a resident of Webb County and is the owner of a transportation company engaged in interstate commerce. Rex Shanks is a local recorded insurance agent for a number of insurance companies, including Pan American Insurance Company. In December, 1950, Rex Shanks as agent for Century Lloyds caused to be issued an automobile liability policy with limitation commonly known as 5/10/5, covering all vehicles of Santos. In August, 1951, Santos received from Century Lloyds a notice of cancellation of this policy. A day or two later

Santos received from Rex Shanks the following memorandum:

"Apolonio—The Company is cancelling this policy, because it's the only one we have with them. We are replacing it with the Pan Am so you will not have to worry about this."

A notice of the cancellation was received by the Interstate Commerce Commission on September 4, 1951. Under the rules and regulations of the I. C. C. the policy could only be cancelled as to third parties after thirty days' notice.

On August 29, 1951, Rex Shanks sent a letter to Pan American Insurance Company, requesting that it issue a policy to replace the Century Lloyds policy. On September 5, 1951, Pan American Insurance Company wrote to Rex Shanks saying it was not adverse to accepting the risk but would prefer to issue a policy effective October 1, 1951. The agency agreement between Pan American Insurance Company and Shanks required him to submit to the company for approval any risk covering trucks operating interstate, but Santos did not know of this limitation of Shanks' authority nor of the proposal to make the policy effective October 1, 1951. On September 29, 1951, a truck belonging to Santos, and one which had been insured under the Century Lloyds policy, was involved in an accident and as a result thereof one Ricardo Villarreal sustained injuries. Rex Shanks was immediately put on notice of the accident, as well as Century Lloyds and Pan American Insurance Company. Though some of the correspondence was mistakenly addressed to Pan American Casualty Company, all insurance companies denied liability.

On February 29, 1952, Ricardo Villarreal filed suit against Apolonio Santos doing business as Santos Transfer Company. Santos employed an attorney for a fee of $1,000 and himself defended the lawsuit. The suit was ultimately settled for $4,500. In order to bring about this settlement, Century Lloyds loaned Santos the sum of $1,500. The pres-ent suit was instituted by Santos against Pan American Insurance Company, to recover the amount of the above settlement plus the $1,000 attorney's fee. The cause was tried before a jury and resulted in judgment in Santos' favor in the sum of $5,586.90, from which judgment the Pan American Insurance Company has prosecuted this appeal.

■ Appellant first contends that the memorandum sent by Rex Shanks to appellee on or about August 30, 1951, was insufficient to constitute a binding contract of insurance, because it does not designate the name of any particular insurance company, any terms and provisions of any type of insurance, was executory in its nature, and did not contain all of the elements essential to a contract of insurance. We overrule these contentions.

On August 29, 1951, Century Lloyds sent to Santos a notice of cancellation of his policy with them, and a copy of this notice was received in the office of I. C. C. on September 4, 1951. On or about August 30, 1951, Santos received what is alleged to be an "Insurance Binder" from Rex Shanks, stating he was placing Santos' insurance with the Pan American. The only insurance company represented by Rex Shanks at the time, having as a part of its name Pan American, was The Pan American Insurance Company. Shanks had represented the Pan American Casualty Company prior to August, 1951, but had ceased to represent it. As heretofore stated, on August 29, 1951, Rex Shanks wrote to Pan American Insurance Company requesting that it issue a policy to replace the Century Lloyds policy. On September 5, 1951, appellant, Pan American Insurance Company, wrote to Rex Shanks saying it was not adverse to accepting the risk but preferred to issue a policy effective October 1, 1951. The agency agreement between appellant and Shanks required him to submit to the company for their approval any risks covering trucks operating interstate. Appellee, Santos, knew nothing of either of these matters. The collision in which Ri-

cardo Villarreal was injured occurred on September 29, 1951. In January, 1954, appellee settled with Villarreal for the sum of $4,500. Century Lloyds loaned to appellee the sum of $1,500 to be used in this settlement, under a covenant not to sue Century Lloyds and to repay it out of any sums recovered by appellee from appellant. The jury found that appellee exercised ordinary care in making the settlement, that the amount was reasonable and that the attorney's fees were reasonable.

■ Under all the circumstances of this case, Rex Shanks, a local recording insurance agent for appellant, had authority to issue the insurance binder to appellee. There was no question about the identity of the insurance company. Pan American could have meant only Pan American Insurance Company, because Shanks represented no other company bearing the name Pan American. Appellant had certified to the Board of Insurance Commissioners that it had appointed Rex Shanks its local recording agent at Laredo. The identity of the insurance company intended is further shown by Shanks' letter to appellant. The undisclosed correspondence of August 29, 1951, between appellant and Shanks was not binding upon appellee. Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91; New York Fire Ins. Co. v. Reed, Tex.Civ.App., 138 S.W.2d 138. In Norwich Union Fire Ins. Society v. Dalton, Tex.Civ.App., 175 S.W. 459, 460, and Tex. Com.App., 213 S.W. 230, the Court said that "A binder is a verbal contract of insurance in praesenti, temporary in its nature, intended to take the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy. It will be construed as containing all of the provisions of an ordinary policy, including the provision for cancellation." See also, 24 Tex.Jur. 681; Pacific Fire Ins. Co. v. Donald, 148 Tex. 277, 224 S.W.2d 204.

■ Appellant next contends that the memorandum did not constitute a binding contract of insurance, because it was made under a mistake of fact, and in the mistaken belief that appellee would have no insurance after September 8, 1951. We overrule this contention. It is true that notice of cancellation of the policy furnished by Century Lloyds was not received in the I. C. C. office until September 4, 1951, and under regulations the policy could not be fully canceled until the I. C. C. office had thirty days' notice of such cancellation. This continuing insurance would be as to injured third parties and not as to appellee. The parties to a policy of insurance can cancel it any time they might choose to do so, subject to its being continued in effect for a period of thirty days, for the benefit of third parties who might be injured by the insured, where the policy has been placed with the I. C. C. The new insurance did not give appellee double insurance. Under the facts and the I. C. C. regulations appellant would be primarily liable to persons injured by appellee and Century Lloyds secondarily liable until October 4, 1951, at which time Century Lloyds would cease to be liable at all. Villarreal was injured on September 29, 1951, within the thirty-day period. The case of Houston Fire and Casualty Insurance Company v. Pritchard & Abbott, Tex., 283 S.W. 2d 728, cited by appellant is not in point. Involved there was a mutual mistake of fact. Both parties thought that no insurance policy had been issued when one had actually been issued. Here Rex Shanks handled appellee's insurance both with Century Lloyds and appellant and knew what the situation was. Under all the facts, there was a meeting of the minds between Rex Shanks and appellee that the binder was to take effect upon the cancellation of Century Lloyds' policy on September 8, 1951. The fact that the injured party was protected by continuing the Century Lloyds policy in effect for twenty-six more days did not change the situation. Garden City Cab Co. v. Fidelity & Casualty Co. of New York, 80 Ga.App. 850, 57 S.E.2d 683; Hanover

Fire Ins. Co. v. D. W. Ray & Son, Tex.Civ. App., 26 S.W.2d 295.

■ Appellant next contends that the memorandum was not a binding contract of insurance because there was no meeting of the minds of the parties. We overrule this contention. There was a meeting of the minds between Rex Shanks, as agent for appellant, on the one hand, and appellee, on the other, as to the coverage, terms and premiums. The coverage, terms and premium were to be the same as the Century Lloyds policy, which was a Texas Standard Policy, and the policy was to become effective on September 8, 1951, the date on which the policy furnished by Century Lloyds was to be canceled as between the parties. All of this is to be inferred from the facts proven. Connecticut Fire Ins. Co. v. Fields, Tex. Civ.App., 236 S.W. 790; Automobile Ins. Co. of Hartford, Conn. v. United Elec. Service Co., Tex.Civ.App., 275 S.W.2d 833; 24 Tex.Jur. 681; Garden City Cab Co. v. Fidelity & Casualty Co. of New York, 80 Ga.App. 850, 57 S.E.2d 683; Hanover Fire Ins. Co. v. D. W. Ray & Son, Tex.Civ.App., 26 S.W.2d 295.

■ We overrule the contention of appellant that the insurance binder was void because the insurance was not to become effective until September 8, 1951, at which time the policy furnished by Century Lloyds was to be canceled. The parties had a right to agree as to just when the insurance should become effective and the fact that they understood that it was to become effective on the future date of September 8, 1951, did not render the binder ineffective as being purely executory in its nature. 29 Am.Jur. pp. 224 and 225.

Under the evidence, Rex Shanks had authority to issue the insurance binder and there was no necessity to submit this issue to the jury. Pan American Insurance Comany had filed with the Insurance Commission of Texas a document showing that Rex Shanks had been appointed a local recording agent for it at Laredo. Any undisclosed agreements or understandings that it had with Shanks did not limit his authority to issue the insurance binder or affect appellee in any way, so long as he dealt with Shanks without knowledge of such undisclosed understandings.

The judgment is affirmed.