**Sarah E. O'BYRNE et al., Appellants,**

v.

**OAK PARK TRUST & SAVINGS BANK, OAK PARK, ILLINOIS, Guardian of the Estate of Ellen V. Loeffler, Appellee.**

No. 7089.

Court of Civil Appeals of Texas,

Beaumont.

Jan. 15, 1970.

Rehearing Denied Jan. 29, 1970.

Orgain, Bell & Tucker, Beaumont, Simmons & Graves, Orange, for appellants.

Frank M. Adams, W. G. Walley, Jr., Beaumont, for appellee.

PARKER, Chief Justice.

. The opinions of October 30, 1969, and December 11, 1969, are each withdrawn and this opinion is substituted in their place. The appeal is from a summary judgment entered in favor of American National Bank of Beaumont as "Guardian of the Estate of Ellen V. Loeffler, N.C.M.," it having been substituted for Oak Park Trust & Savings Bank, Oak Park, Illinois, guardian of the estate of Ellen V. Loeffler, a person of unsound mind. The guardian sought to set aside a deed from Ellen V. Loeffler to Robert J. Byrne, dated August 27, 1962, conveying 100 acres of land in Orange County, Texas, and to recover of and from the defendants the title to and possession of said 100 acres.

It was alleged that the defendants, together with plaintiff's ward, were the heirs of Robert J. Byrne, deceased, who died without leaving a will and upon whose estate no administration was pending in the State of Texas.

The summary judgment cancelled the deed; made final an interlocutory judgment against two defendants, Robert A. Dixon and Thomas Dixon; and plaintiff recovered title to the 100 acres. The parties will be referred to as they appeared in the trial court.

The petition sought cancellation of the deed upon two asserted grounds: (1) at the time of the execution of the deed, Byrne occupied a position of confidence and trust as the attorney at law, agent, and attorney-in-fact and brother of the grantor, and said instrument was executed without consideration, or alternatively for a wholly inadequate consideration; and (2) the grantor, at the time of the execution of the deed, was without mental capacity to understand the nature of the instrument and the consequences of her act in executing the same. The remainder of the pleading was in the form of a trespass to try title action. The defendants traversed the allegations of the petition and joined issue thereon.

The plaintiff moved for summary judgment asserting that there was no genuine issue as to any material fact, based upon the pleadings of the parties, the deposition of Rita Jagnow (Davis), the affidavits of Alvin H. Huth, J. R. Bowen, and Willard J. Hall, as well as certified copies of certain instruments attached to the motion.

## I. Absence of Necessary Parties

From the affidavit of J. R. Bowen and exhibits attached thereto as parts of plaintiffs' motion for summary judgment, it appears that on December 11, 1962, Robert J. Byrne executed and delivered an easement for pipeline purposes on the 100 acre tract to Texas Gas Corporation for which it paid Robert J. Byrne $1,235.60 for the right-of-way and $2,471.20 for damages in connection with the right-of-way. According to the affidavit of William R. Langley, cashier of Oak Park Trust and Savings Bank, Oak Park, Illinois, such amounts of money were credited to the joint checking account of Ellen V. Loeffler and Robert J. Byrne on January 14, 1963, said account being numbered 525–906, with receipt executed by the Collection Department therefor. Such right-of-way being a part of the 100 acres, Texas Gas Corporation is a necessary and indispensable party to the suit. Texas Gas Corporation is vitally and directly concerned with the validity of the deed from Mrs. Loeffler to Byrne and would undoubtedly be affected by its cancellation. Royal Pet. Corp. v. McCallum, 134 Tex. 543, 552, 135 S.W.2d

958 (1940); Rule 39, Texas Rules of Civil Procedure.

■ The trial court could not undertake to cancel the deed from Loeffler to Byrne without having before it all of the parties affected by the proposed cancellation. Runck v. Gates, 14 S.W.2d 885 (San Antonio Tex.Civ.App., 1929, no writ). In Sharpe v. Landowners Oil Ass'n, 127 Tex. 147, 92 S.W.2d 435, 436 (1936) it was said:

> "It is settled beyond all question in this state that in a suit to cancel a written instrument all persons whose rights, interests, or relations with or through the subject-matter of the suit will be affected by the cancellation are necessary parties. Business Men's Oil Co. v. Priddy (Tex.Com.App.) 250 S.W. 156; McKay v. Phillips (Tex.Civ.App.) 220 S.W. 176; State National Bank v. Lancaster (Tex.Civ.App.) 229 S.W. 883; Dial v. Martin (Tex.Civ.App.) 8 S.W.2d 241. The absence of a necessary party in a suit for cancellation is fundamental and jurisdictional to such extent that it must be considered by this court. It being apparent from the face of the record in this case that Stubblefield and wife are necessary parties to the suit, the trial court was not authorized to enter any judgment, and this court cannot render any judgment except to reverse and remand the case. Barmore v. Darragh (Tex.Civ.App.) 227 S.W. 522."

See also, Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891, 892 (Tex. Sup., 1966); Stubblefield v. State, 425 S.W.2d 699, 702 (Tyler Tex.Civ.App., 1968, error ref. n. r. e.).

■ All those entitled to the estate of Robert J. Byrne, deceased, and Texas Gas Corporation are necessary parties to plaintiff's suit to cancel the deed from Mrs. Loeffler to Byrne. The district court had no jurisdiction to cancel such deed without these necessary parties. This is jurisdictional and presents fundamental error without defendants raising this question by

point of error. Miller v. Davis, 136 Tex. 299, 150 S.W.2d 973, 980, 136 A.L.R. 177 (1941).

## II. *Mental Capacity of the Ward to Execute the Deed*

One of the grounds for cancellation of the deed from Mrs. Loeffler to Byrne was that she lacked mental capacity at the time of the execution of the deed.

It is not necessary to review the evidence in detail upon this point for two reasons: the "deposition" of Rita Jagnow Davis was simply acknowledged, not supported by her affidavit; and even if we were to consider it as a deposition, the most it did was to raise a fact issue as to Mrs. Loeffler's mental capacity. This is so because we must also consider the affidavits filed by the defendant: namely, Mrs. Seefurth, the notary taking Mrs. Loeffler's acknowledgment upon the deed under attack, as well as Mrs. Loeffler's attending physician. These both averred that she was of sound mind. Thus, the conflicting affidavits simply raised a fact issue.

Mrs. Seefurth, the notary taking the acknowledgment on the deed, by affidavit said:

> "On August 27, 1962, I witnessed the signature of Mrs. Ellen V. Loeffler to a deed from Mrs. Loeffler to Mr. Robert J. O'Byrne, in the office of Blackwell Real Estate and Insurance Company. Mrs. Loeffler signed the deed in my presence, with no aid from any other person. The only persons who I remember being present at the signing of the deed were Mrs. Loeffler, myself and Mrs. Loeffler's daughter, who I believe was Mrs. Rita Jagnow. At the time that Mrs. Loeffler signed the deed and I obtained her acknowledgement and notarized the instrument, I was of the opinion that it was her free and voluntary act, and that she was aware of the fact that she was signing a deed, and was not acting under delusion about what the instrument was. It was my opinion that she

knew what she was doing, and that she signed the deed voluntarily. If I had not been of such opinion, I would not have notarized the deed."

■ The opinion of Rita Jagnow Davis as to the mental capacity of Mrs. Loeffler did not establish her incapacity as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346 (1948).

The rule governing such matters is stated very concisely in Smith v. Collins, 390 S.W. 2d 301, 302 (Waco Tex.Civ.App., 1965, no writ):

"Moreover, it is the duty of the court hearing the motion for summary judgment to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557."

■ Considering the so-called deposition of Mrs. Jagnow and the affidavit of Mrs. Seefurth, a fact issue was raised as to the mental capacity of Mrs. Loeffler at the time of the execution of the deed. It was, consequently, error for the court to enter judgment cancelling the deed for want of mental capacity. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 46–47 (Tex.Sup., 1965).

*III. Evidence that the Deed was Executed Without Consideration, or Alternatively for Wholly Inadequate Consideration*

■ The affidavit of the accountant, Huth, does not show as a matter of law that there was no consideration for the execution of the deed, or that it was not a deed of gift. The affidavit of J. R. Bowen is, at best, inconclusive and insufficient to establish fraud.

■ Plaintiff not only did not establish the consideration for the deed, but also failed to establish that the consideration was insufficient. Reliance upon the opinion evidence of the appraiser, Hall, as given in his affidavit, is misplaced in a summary judgment proceeding.

■ Hall expressed his opinion as to the value of the land at the time of the execution of the deed from Loeffler to Byrne. Opinion evidence does not establish a fact as a matter of law. In Hood v. Texas Indemnity Ins. Co., supra, Chief Justice Hickman said: "That character of testimony is but evidentiary and is never binding upon the trier of facts. * * *" See also Bond v. Snow, 422 S.W.2d 842, 844 (Eastland Tex.Civ.App., 1967, error ref., n. r. e.) with its voluminous citation of cases and these concluding remarks: "Opinion evidence is not of that conclusive character required for the rendition of a summary judgment. * * *" Hall's testimony, if received in a trial on the merits would not have been conclusive. As an affidavit, it did not warrant a finding of a value of the land in a summary judgment proceeding. The trial court, therefore, erred in rendering judgment based in part upon Hall's affidavit. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., supra.

■ The consideration recited in the deed of August 27, 1962, is $10.00. The actual consideration is not known. As recorded, the deed has $3.30 United States Internal Revenue Documentary stamps affixed and cancelled. Additional stamps could have been properly affixed and cancelled after the deed was recorded if the actual consideration was more than $3,000.-00. Affidavits as to the value of the 100 acres do not qualify as a basis for summary judgment.

The following statement from Duane v. Altenburg, 297 F.2d 515 (7th Cir., 1962) referring to affidavits qualifying as a basis for summary judgment is applicable to the instant case:

"They are not competent for the purpose of negating the existence of a genuine

issue of material fact where matters of motive or opinions on value are involved. Fogelson v. American Woolen Co., 2 Cir., 170 F.2d 660, Cf. Subin v. Goldsmith, 2 Cir., 224 F.2d 753; Colby v. Klune, 2 Cir., 178 F.2d 872. A proceeding on summary judgment is in the nature of an inquiry to determine whether or not a genuine issue of fact exists. It is not for the purpose of determining such an issue. Caylor v. Virden, 8 Cir., 217 F.2d 739. It does not permit of trial by affidavit. Campana Corporation v. Harrison, 7 Cir., 135 F.2d 334."

Such principle applies not only to the movant for summary judgment but also to the defendant.

The Supreme Court of Texas held in Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958) that under Rule 166–A affidavits to be effective either to support or oppose a motion for summary judgment "must be made by competent affiants with personal knowledge of the statements in them, which statements must be so worded that if given on the witness stand they would be admissible as evidence." Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557 (1962) and as said in the later case: "Obviously mere conclusions will not suffice * * *" citing numerous cases.

■ Applying the above principles to the affidavits, we find no statement as to the consideration paid for such deed. The unsworn deposition of Rita Jagnow Davis is incompetent to prove anything. Further, her statement that of her own knowledge Byrne did not pay Mrs. Loeffler the *three thousand dollars mentioned in the instrument* nor did he pay her any amount before we signed it on August 27, 1962 * * * on that date, or at any date thereafter during the remainder *of* my three weeks' visit with them" (emphasis ours) is not effective under Tobin v. Garcia, supra, and Gaines v. Hamman, supra. There is no mention of $3,000.00 in the deed. There is no affidavit by any person and no effective deposition in any manner supporting the allegations in plaintiff's petition that the deed was executed without consideration or wholly inadequate consideration.

Attention is called to statements in affidavits attached to the motion for summary judgment and the reply thereto. For instance, in the affidavit of Edward O'Byrne, he states:

"My uncle and aunt lived together in Mrs. Loeffler's residence at 1201 North Rossell Avenue, Oak Park, Illinois. They were devoted to each other, and Robert J. Byrne, who died in May, 1963, *without leaving a will,* had a joint checking account as joint tenants with the right of survivorship with his sister, Ellen V. Loeffler, in the Oak Park Bank and Trust Company until the time of his death, the balance in such account at his death being approximately $150,000. Both Mr. Byrne and Mrs. Loeffler could write checks on the account at any time. *Mr. Byrne took care of the Texas property for his sister, since he was an attorney."* (Emphasis ours.)

■ The above italicized statements and similar ones are not effective to support or deny a motion for summary judgment under Tobin v. Garcia. supra, or Gaines v. Hamman, supra. Byrne had a license to practice law in the State of Illinois—not Texas. Mrs. Loeffler by her personal check paid taxes to Orange County on the 100 acres of land in 1951, 1957, 1954, 1955 and 196—. In 1961, Mrs. Loeffler conveyed a pipeline right-of-way to Trans-Southern Pipeline Company, Houston, Texas, and deposited the $1,650.00 received therefor in said checking account No. 525–906. Prior to 1962, Mrs. Loeffler furnished all information to her accountant, Huth, for income tax returns. All evidence in the record indicates that Robert J. Byrne was an honest man. Mrs. Loeffler was of unsound mind at the time of the filing of the suit and could not testify and Byrne was dead. They were brother and sister and lived together in Illinois. It was not in his

office that Mrs. Loeffler signed the deed to him. She took it without him present to the office where she was not known where she signed the deed and Mrs. Seefurth took her acknowledgment in the cautious, careful manner stated in Mrs. Seefurth's affidavit.

The inventory of Mrs. Loeffler's estate shows that until Robert J. Byrne's death in May, 1963, there was a joint account in the Oak Park Trust and Savings Bank (Account No. 525–906) which was in the names of Ellen V. Loeffler and Robert J. Byrne "as joint tenants with the right of survival, and not as tenants-in-common" with a balance of more than $145,000.00. Also as such joint tenants they owned $10,-000.00 in government bonds. Upon Byrne's death all the money in said account and said government bonds became the property of Ellen V. Loeffler. Byrne while living could have appropriated the entire account. Instead, he added to it by his deposit therein of the proceeds received by him from Texas Gas Corporation for the pipeline right-of-way. Upon the death of Byrne all of this joint account and bonds were owned by Mrs. Loeffler and listed as such by the guardian of her estate, Oak Park Trust and Savings Bank. The latter instituted this suit four years later without any explanation as to the delay. See in this connection: Holland v. Brown, 66 S.W.2d 1095 (Beaumont Tex.Civ.App., 1933, error ref.) and cases cited therein. Under the present record this cause of action would have been barred by the four-year Statute of Limitations. Cooper, Administrator v. Lee, 75 Tex. 114, 12 S.W. 483, 487 (1889).

*IV. Attorney and Client Relationship.*

█ While there is evidence that Byrne was an attorney at law and had acted as such for Mrs. Loeffler, there is no probative evidence in the record that he was an attorney-in-fact for her or that he acted in either capacity in connection with the deed involved here or that he exerted any undue influence on her to execute the deed to him.

Plaintiff-appellee has contended that the: "* * * summary judgment and rendering its decree setting aside the deed involved was correct because the record conclusively established that such deed was executed and delivered under the circumstances as to require application of the doctrine of constructive fraud on the part of the grantee, and Appellants wholly failed to make any showing of the perfect fairness, adequacy of consideration and equity on the part of the grantee, as Appellants were required by law to make to preclude recovery by Appellee."

Plaintiff-bank relied upon three cases in asserting that constructive fraud has been established in this case. They are Archer v. Griffith, 390 S.W.2d 735 (Tex.Sup., 1964) ; Cooper, Administrator v. Lee, supra ; and Bell v. Ramirez, 299 S.W. 655 (Austin Tex.Civ.App., 1927, error ref.). In none of the three cases was the judgment of the trial court obtained on a summary judgment proceeding. In each case the trial was upon the merits.

In Archer v. Griffith on page 738, we find:

"It was stipulated by the parties that the relationship of attorney and client existed between petitioner and respondent when the deed was executed and delivered. That fact has an important bearing on the controversy."

We honor the holding in Archer v. Griffith, supra, on page 739:

"The relation between an attorney and his client is highly fiduciary in nature, and their dealings with each other are subject to the same scrutiny, intendments and imputations as a transaction between an ordinary trustee and his cestui que trust."

In 13 A.L.R.3rd on page 714, the Archer case is cited with the analysis on pages 713 and 731:

(a) "* * * that the court will closely or jealously scrutinize contracts for compensation made between an at-

torney and his client during the existence of an attorney-client relationship."

(b) "In a large number of cases it has been held or recognized, either explicitly or by implication, that a contract for an attorney's compensation made during the existence of an attorney-client relationship is presumptively unfair or invalid, and that the burden of proving the fairness or validity of such contract is upon the attorney."

Archer v. Griffith was tried before the court without a jury. No findings of fact or conclusions of law were filed or requested. The analysis of the case contained on page 735, when considered with the statement of the Supreme Court under syllabus 11 on pp. 740 and 741 seems to be an accurate summary which is as follows:

"The Supreme Court, Walker, J., held that question whether agreement between attorney and client wife, entered into during existence of attorney-client relation, whereunder attorney was to receive percentage of property obtained by wife through settlement or suit, was so exorbitant and unreasonable as to require setting aside wife's deed to attorney was one of fact, and finding for client in action to cancel deed was not erroneous."

In Bell v. Ramirez, supra, the deed from Ramirez to Bell was cancelled because under the undisputed evidence it "was in fact a mortgage to secure Bell in his fees and expenses as attorney for Ramirez, and not a conditional sale, as appellant contends."

*"The relation of attorney and client existed between Bell and Ramirez when the deed was executed, which fact raised the presumption of constructive fraud and cast upon Bell the burden of showing utmost good faith, a full and fair price, absence of pressure of influence by the confidential relation, and that no advantage was taken of his client, which burden* Bell failed to discharge." (Emphasis ours.)

Bell was alive on that trial and testified. In Bell v. Ramirez there was evidence the fee of Bell was greatly excessive. Nevertheless, Chief Justice McClendon's first reason by itself required cancellation of the deed from Ramirez to Bell.

In Cooper v. Lee, supra, a jury trial was had. Upon a jury finding the deed was cancelled. The Supreme Court reversed the case because of improper charge involving a plea of limitation.

These three cases relied upon by plaintiff-appellee were tried upon the merits. The language used in each must be considered in the light of that fact.

The absence of a necessary and indispensable party, Texas Gas Corporation, by itself requires the judgment entered hereinafter.

From the foregoing, it is apparent that it was error for the trial court to enter the summary judgment cancelling the deed. The cause is remanded for a trial upon the merits when all of the necessary parties are before the court. Our review of the factual matters herein, taken as it is from affidavits and not from a review of the testimony, will not be considered as controlling in any degree upon the trial of the cause. We simply hold that plaintiffs were not entitled to the summary judgment which was rendered below and remand the cause for a trial upon the merits.

Reversed and remanded.

STEPHENSON, and KEITH, Justices (concurring).

Judge PARKER has covered adequately the problems presented by this appeal from a summary judgment. However, we add thereto our comments on the seeming tendency to abuse the summary judgment procedure. As was said by Judge Hutcheson

in Gray Tool Co. v. Humble Oil & Refining Co., 186 F.2d 365 (5th Cir., 1951):

"* * * this is another of those all too numerous instances of the misuse of the summary judgment procedure to cut a trial short; that here, as so often before, it has served only to prove that short cutting of trials is not an end in itself but a means to an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through." *

Our Supreme Court in In re Price's Estate, 375 S.W.2d 900, 904 (Tex.Sup., 1964), spoke against undue haste in an attempt to dispose of cases under Rule 166–A, saying:

"The purpose of the rule is to eliminate patently unmeritorious claims, or untenable defenses and to avoid delays of trial where there is no genuine issue of fact. It was never intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. The summary judgment is to be applied with caution and will not be granted where there is doubt as to the facts. Although the prompt disposal of judicial business is greatly to be desired, that is not the main objective. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929."

Justice Greenhill in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.Sup., 1965), went to some length to set out in clear language the responsibility of the trial judge in passing upon a motion for summary judgment. We had occasion to tabulate these in Le Tulle v. McDonald, 444 S.W.2d 794, 795 (Beaumont Tex.Civ.App., 1969, error ref. n. r. e.), to which we now refer. It is apparent from a consideration of our record that it was error for the trial court to grant the motion for summary judgment. The attempt to shorten the trial has, therefore, lengthened the time required for the ultimate disposition of the cause.

---

* The Federal decisions are pertinent in construing Rule 166–A because our rule was adopted from and is substantially worded as is the Federal Rule 56. Elias v. Manis, 292 S.W.2d 836, 839 (Beaumont Tex.Civ.App., 1956, error ref.).