**INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, Appellant,**

v.

**METRO MATERIAL MARKETING, INC., Appellee.**

No. 20917.

Court of Appeals of Texas, Dallas.

Dec. 17, 1982.

Rehearing Denied March 9, 1983.

---

Larry L. Gollaher, Dallas, for appellant.

Clyde Bracken, Bracken & Morris, Ann S. Fritts, Green, Gilmore, Rothpletz & Hyden, Dallas, for appellee.

Before AKIN, SPARLING and FISH, JJ.

SPARLING, Justice.

This is an appeal from a summary judgment. Appellant, Indiana Lumbermens Mutual Insurance Company, in three points of error, complains that it was entitled to summary judgment as a matter of law; that summary judgment was erroneously granted for appellee, Metro Material Marketing, Inc., because a fact issue of whether its insured suffered a legal loss was raised; and that the amount of damages was not established as a matter of law. We hold that damages were improperly assessed and, accordingly, reverse.

On May 31, 1978, Metro contracted with Texas Federal Savings and Loan to purchase a lot and a partially constructed building. Texas Federal, as acknowledged in the contract, was not the owner of the property, but rather the mortgagee. The contract of sale was conditioned upon the expected purchase of the property by Texas Federal at a foreclosure sale. Previously, the builder in default had secured a builder's risk insurance policy from Indiana Lumbermens payable to Texas Federal.

On June 6, 1978, Texas Federal, as expected, purchased the property at the trustee's sale, and on June 13, 1978, Metro contacted an agent of the Gulf Insurance Company requesting builder's risk insurance coverage on the premises. Despite the dissent's contention that the property was insured by Gulf, the record indicates that Gulf agreed to insure the premises effective at the *time of closing*. The Gulf Insurance agent, in a deposition made part of the summary judgment proof, denied that the

premises were ever insured by Gulf.[1] In response to a question of what would happen if the insurance policy did not arrive by the time of closing, the insurance agent replied "if it [the sale] went on *and closed,* and everything was in order and he [Metro] had an insurable interest, then this [the application] would constitute a binder." (Emphasis supplied.)

The property was destroyed by fire on June 19, 1978. Texas Federal offered to rescind the contract of sale on the destroyed property. Metro agreed, however, to complete the sale provided Texas Federal would assign to Metro its proceeds from Indiana Lumbermens' coverage on the damaged property. On June 23, 1978, the property was deeded to Metro, along with Texas Federal's assignment of the proceeds from the Indiana Lumbermens' policy. Metro, in turn, paid the full contract price of $46,720.00 to Texas Federal. Indiana Lumbermens denied Metro's claim to the insurance proceeds. Metro then sued Texas Federal and Indiana Lumbermens joined Gulf Insurance Company as a third party defendant. Gulf prevailed against Indiana Lumbermens by summary judgment which cause was severed from the present case. Although the correctness of that ruling is not before us, it appears to be a determination contrary to the dissent's contention that Metro had insurance coverage with Gulf.[2]

Indiana Lumbermens relies upon *Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.,* 163 Tex. 250, 353 S.W.2d 841 (Tex.1962), that resolved the question of which insurance company is liable when property, destroyed while under contract of sale, is insured against loss by *both* the vendors and vendee. *Paramount* held that the vendee's insurance company was liable

because the insured vendors suffered no pecuniary loss to premises destroyed by fire while under the contract of sale which was ultimately completed. The Court in *Paramount* specifically limited its holding to circumstances involving dual coverage, saying, "... we leave open the question of whether, where the vendee has no insurance, there can be recovery on the vendor's policy subject to a constructive trust for the vendee...." 353 S.W.2d at 845. In the present case, the summary judgment proof does not reflect that Metro obtained insurance coverage, though negotiations aimed at obtaining builder's risk coverage apparently occurred. There is no fact issue properly presented indicating that Gulf was liable under any policy, and it was the duty of Indiana Lumbermens to raise the issue, if any existed, by summary judgment proof. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

■ The Supreme Court in *Paramount* reasoned that since the vendors received the full purchase price after the destruction, the interest of the vendors "... became the amount of the unpaid purchase price, and, as to that interest, they suffered no loss." 353 S.W.2d at 845. The rule was thus adopted that the entire transaction would be considered, rather than the relative position of the parties *at the time of the loss.* Therefore, we must consider the entire transaction between Texas Federal and Metro, including the events *after* the fire loss. As in *Paramount,* Metro paid the full contract price for the property after the contract had been renegotiated to include the insurance proceeds. Thus, Texas Federal suffered no pecuniary loss, and may not keep any insurance proceeds for the loss. But since Metro, the purchaser, held equitable title under its executory contract of

1. The dissent relies upon a Gulf builder's risk policy effective "June 16, 1978." This policy was actually issued nine days after the loss to give the Gulf claims department a policy number under which to file the claim. The notation "spoiled" on the policy indicated that it was a "dummy" policy.

2. The dissent incorrectly presumes that "Gulf was granted a summary judgment on the

grounds that Indiana Lumbermens lacked standing to sue on the policy." Actually, a reading of the transcript reveals that the trial court gave no reason for granting summary judgment. Gulf's Motion for Summary Judgment recites *three* grounds for entitlement, including that, as a matter of law, Metro was not insured by Gulf.

sale, it should recover for the loss it has suffered. Equity requires this result; otherwise, should the vendor receive the full purchase price *and* the insurance proceeds, he would be compensated twice. We therefore hold that Indiana Lumbermens is liable to Texas Federal, who, in turn, must hold the proceeds in trust for Metro. *See Cheatwood v. De Los Santos,* 561 S.W.2d 273 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.).

Indiana Lumbermens finally contends that the amount of damages was improperly assessed by the court in its summary judgment. We agree. An affidavit attached to Metro's motion for summary judgment established that Metro contracted to pay $46,720.00 for the lot and partially constructed building. The fair market value of the lot alone was $13,000.00. The court calculated the net loss to be $33,720.00: the difference between the contract price and the value of the lot without the building. That amount, plus interest, was awarded to Metro.

The insurance policy entered in the record as summary judgment proof does not contain a provision for measuring the loss incurred by the insured or its assignee, but contains only a provision limiting the liability of the insurer. The proper measure of damages for permanent injury to real property is the difference between the reasonable cash market value immediately before and immediately after the injury. *Weaver Construction Company v. Rapier,* 448 S.W.2d 702, 703 (Tex.Civ.App.—Dallas 1969, no writ). There is no summary judgment proof establishing the market value of the partially constructed building before it was destroyed by fire. We cannot presume that the sale price of the property, considered alone, established its fair market value. Therefore, the amount of damages awarded to Metro by the trial court was computed improperly. Point of error number three is sustained.

Although Tex.R.Civ.P. 166-A allows partial summary judgment, the Court of Appeals may not affirm a judgment as to liability, but reverse and remand it for trial

of the damage issue. Tex.R.Civ.P. 434; *Hanover Fire Ins. Co. v. Bock Jewelry Co.,* 435 S.W.2d 909, 919 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

AKIN, Justice, dissenting.

I cannot agree that the liability of Indiana Lumbermens is established as a matter of law. Instead, I would reverse and render in favor of Indiana Lumbermens on the authority of *Paramount Fire Insurance Co. v. Aetna Casualty & Surety Co.,* 163 Tex. 250, 353 S.W.2d 841 (Tex.1962). I would so hold because the summary judgment evidence establishes, as a matter of law, that Metro, the vendee, had a policy of insurance with Gulf Insurance Company covering the interest of the vendee. Thus, *Paramount* controls. Additionally, I fail to understand how a constructive trust can be imposed as a non-existent right so as to permit recovery by Metro. Accordingly, I dissent.

Indiana Lumbermens issued a builders risk policy to the owner of three houses under construction. Texas Federal, the mortgagee, was a loss payee under this policy. Because the builder defaulted on its note, Texas Federal posted the properties for foreclosure sale. Prior to foreclosure, Metro, which had an inferior materialman's lien on these properties, contracted with Texas Federal to purchase all three properties. One of the three houses was destroyed by fire after Metro became the equitable owner by virtue of the contract of sale. The sale closed, nevertheless, and Texas Federal received the full contract price.

The crucial question here is whether Metro had insurance protecting its interest in the property destroyed by fire, even though Metro chose not to assert a claim against its indemnitor. Secondly, a question exists as to under what viable theory would justify Metro's recovery under Indiana Lumbermens' policy. During the negotiations resulting in the sales contract, no mention was made of insurance. After the contract of sale was signed, Adams, the president

and major shareholder of Metro, called David McCall, a recording insurance agent with whom he had dealt over the years, to obtain coverage on the three properties he intended to purchase, including the property in question. Adams requested the agent to furnish an appropriate insurance policy covering all three properties effective June 16, 1978, the proposed date of closing and three days before the fire. The insurance agent, acting on this request, bound the property and applied to Gulf Insurance Company to issue a policy covering the property. According to the insurance agent, and to the deposition of an official from Gulf Insurance, the application for coverage was a binder insuring the property without action on behalf of Gulf Insurance, *if the requesting party had an insurable interest.* Indeed, an insurance policy was prepared by Gulf and given both to the new mortgagee and the agent. Metro cancelled the policy after the fire loss. Because the vendee, Metro, owned the beneficial interest in the property by virtue of the contract of sale, the loss should fall upon Metro. *Smith v. Warth,* 483 S.W.2d 834 (Tex.Civ. App.—Waco 1972, no writ). I would hold, therefore, that without question, Metro was covered by insurance on the property and the loss should fall on the vendee. *See Southland Life Ins. Co. v. Statler,* 139 Tex. 496, 163 S.W.2d 623, 628 (1942). Metro, the vendee, had insurance, as did the vendee in *Paramount,* but chose not to assert a claim against its indemnitor, Gulf Insurance. Instead, Metro cancelled its policy.

In support of the fact that Metro was covered by fire insurance at the time of loss, Gulf's policy of insurance on the subject property is a part of the summary judgment record. This policy shows that the effective date of Gulf's policy was June 16, 1978, three days before the fire. Written in ink on the face of this policy is the word "spoiled." This policy, as well as other pertinent summary-judgment evidence, is attached to answers to interrogatories propounded to F.E. Hahnel, Custodian of Gulf's records. Immediately following

Gulf's policy in its records is a document entitled "Inland Marine Unit Policy Insurance Instruction Sheet." The latter document contains instructions from the underwriter, D.B. DuPriest, Jr., dated June 15, 1978, to prepare the policy. Additionally, under "Miscellaneous Instructions," the following language appears: "Please do not spoil this policy as it has already been given to agent and mortgagee." Attached to the document entitled "Inland Marine Unit Policy Insurance Instruction Sheet" is an inland marine builder's risk form with all blanks filled in by hand, which specifically refers to the property in question. This undisputed evidence from Gulf's files shows without question that the property destroyed by fire was bound not only by the agent David McCall but by Gulf itself.

Further summary-judgment evidence from Gulf's file with respect to this policy states in handwriting dated August 8, 1978: "Possible loss of 6–20–78 still outstanding and reserve is still up, per Tommy Adams [1] today. Larry suggested we do nothing at this time just hold the file. (signed) D.D." The record shows that this notation was made by D.B. DuPriest, Jr., an underwriter for Gulf Insurance. On September 12, 1978, DuPriest made the following notation:

The application came in in routine fashion and it was worked that way. This agent sends application for B/R quite often and there was no reason for question.

*The facts concerning the loss were known only after the policy had been set up.* So as to give the loss dept. a vehicle a policy was written. *Further facts became known about the loss so nothing was said outside the office about the policy being issued.*

The loss dept. has now taken down the reserve and this policy spoiled. Nothing has ever been put on company books.

/s/ D.B. DuPriest, Jr.
September 12, 1978
[Emphasis added]

---

1. Adams was the president of Metro.

This notation by DuPriest explains why the policy issued contained the written notation "spoiled." In any event, without question, David McCall, the recording agent for Gulf, testified by deposition that he had authority to bind Gulf and did so. *See Pan American Insurance Co. v. Santos,* 295 S.W.2d 254 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). According to McCall, no limitation, as stated in the majority opinion, was placed upon Gulf's insurance policy, which was routinely prepared after McCall had bound the property with fire insurance. Even if the majority's quoted assertion that Gulf's policy was effective only if the sale closed, the summary judgment evidence undisputedly shows that the sales contract was to be closed on June 16, 1978, but did not close on that date because of problems not related to this appeal. Thus, even if Adams, Metro's president, intended the insurance not to be effective until "time of closing," he undisputedly requested and obtained coverage from Gulf effective June 16, 1978, three days before the fire.

The majority also quotes the following from the deposition of McCall: "if it [the sale] went on and closed and everything was in order and he [Metro] had an insurable interest, then the [application] would constitute a binder." Because, as a matter of law, Metro had an insurable interest as equitable owner, this quotation from McCall's deposition supports this dissent rather than the majority's conclusion that Indiana Lumbermens had failed to raise a fact issue with respect to whether Metro had coverage with Gulf.

After the fire occurred to one of the three properties, in an apparent effort to place liability on Indiana Lumbermens, Metro advised its insurance agent that the contract did not close and stated that the "binder" would not be necessary. At the same time, Metro and Texas Federal engaged in renegotiations with respect to the contract of sale. The summary judgment evidence is in conflict as to whether Metro or Texas Federal insisted upon the sale being closed, including the property damaged despite the fire loss. The summary judgment evidence is not, however, in dispute that one of the three properties subject to the contract of sale between Texas Federal and Metro had been sold by Metro prior to the closing on June 23, 1978. Of course, this property was not the property destroyed by fire. In any event, Metro undisputedly closed the contract and paid Texas Federal the full contract price; however, Texas Federal assigned to Metro whatever rights it had under the policy of insurance with Indiana Lumbermens, as did the vendor in *Paramount.*

Predicated upon this information, Indiana Lumbermens brought a third party action against Gulf Insurance Company; however, Metro chose not to assert a claim against Gulf and Gulf was granted a summary judgment on the grounds that Indiana Lumbermens lacked standing to sue on the policy and that Metro had filed no claim against it.[2] That summary judgment was

2. I am compelled to respond to the notation contained in footnote number two in the majority's opinion, which states:

> The dissent incorrectly states that summary judgment was granted on the grounds "that Indiana Lumbermens lacked standing to sue on the policy." Actually, a reading of the transcript reveals that the trial court gave no reason for granting summary judgment. Gulf's Motion for Summary Judgment recites that, as a matter of law, Metro was not insured by Gulf.

Apparently the majority declines to adhere to the rule that summary judgment may be granted by the trial court only on the grounds set forth in the motion. *E.g., Rutherford v. Whataburger, Inc.,* 601 S.W.2d 441, 443–44 (Tex.Civ. App.—Dallas, 1980, writ ref'd n.r.e.); *See* Tex.

R.Civ.P. 166–A(c). Gulf's motion states: "Indiana (Lumbermens) has no standing to maintain such action, for the pleadings, deposition, and affidavit on file herein shows that third-party plaintiff Indiana is a stranger to any possible contract of insurance between Third Party Defendant Gulf and Plaintiff Metro." Additionally, Gulf asserted as a ground that no policy existed. However, the summary-judgment evidence adduced from Metro and Gulf employees establishes the contrary. Additionally, as an alternative ground, Gulf asserted that no premium had been paid by Metro. The conclusion of Gulf's motion states that it is entitled to judgment as a matter of law, but that is not a specific ground upon which judgment may be granted. *Id.* at 444. Consequently, the majority is mistaken in suggesting that the dissent was

severed. Thus, the majority is in error in concluding that Indiana Lumbermens has failed to raise a fact issue as to Gulf's coverage and that no coverage existed as a matter of law. Whether Metro had insurance and chose not to file a claim for its loss is immaterial to whether coverage existed. I would hold, as a matter of law, that Metro had insurance coverage with Gulf but chose to waive its claim, thus placing this case squarely within the supreme court's holding in *Paramount.*

*Paramount* held that if the vendor is entitled to specific performance under the contract and collects the full purchase price despite the fire loss, the vendor has suffered no legal loss. In both *Paramount,* and in this case, the parties renegotiated the sales contract after the loss. Likewise, in both cases, the vendor assigned its rights under its insurance policy. The supreme court reasoned that after the contract of sale, the interest of the vendor was the amount of the unpaid purchase price and, as to that interest, the vendor suffered no legal loss. Thus, no liability existed under the vendor's insurance policy, and the assignment by the vendor of any rights under that policy was invalid. *Paramount,* 353 S.W.2d at 845. Because the summary judgment evidence here shows that Metro had insurance coverage at the time of loss on the property with Gulf Insurance, the full import of *Paramount* mandates that Texas Federal, as in *Paramount,* had no loss and that its assignment of the insurance proceeds to Metro was of no effect, as was the identical assignment by the vendor in *Paramount.*

If, as the majority concedes, Texas Federal has suffered no pecuniary loss and may not recover under its insurance policy, it cannot assign that non-existent right to Metro. Neither can a constructive trust be imposed by law under equitable principles. Nevertheless, the majority apparently imposes a constructive trust upon this non-existent right. If Texas Federal has suffered

no loss, then its assignment of its rights under the policy is invalid because it had no rights to be assigned, as in *Paramount.* Likewise, under equitable principles no constructive trust can be imposed because Texas Federal had no claim to assert against its indemnitor. It is elementary that since an indemnity contract is personal as between indemnitor and indemnitee, any right of recovery by Metro against Indiana must, of necessity, rest upon the right of Texas Federal to assert a claim under Indiana's policy, which right Texas Federal does not have even in the majority's opinion. Furthermore, a constructive trust rests upon equitable principles, as in *Cheatwood v. de los Santos,* 561 S.W.2d 273 (Tex.Civ.App.— Eastland 1978, writ ref'd n.r.e.).

The majority's reliance upon *Cheatwood* is misplaced. In *Cheatwood,* the vendor was fully compensated by his indemnitor for the loss after the vendee had made substantial improvements and significant payments on the property. In order to prevent an effective double recovery by the vendor because the vendor would receive the purchase price and the insurance proceeds, the court imposed a constructive trust on the insurance proceeds *in the hands of the vendor for the vendee's benefit. Cheatwood* is inapplicable here because Texas Federal had neither the insurance proceeds from Indiana Lumbermens nor the right to recover upon the indemnity contract from Indiana Lumbermens and thus no double recovery by Texas Federal is possible here.

Furthermore, no such equitable principles, as in *Cheatwood,* exist here because although Metro had coverage, it deliberately chose not to assert a claim against its indemnitor (so as to apparently avoid a premium payment) and renegotiated the contract of sale with Texas Federal to provide for an assignment of Texas Federal's rights against Indiana Lumbermens to Metro. Only after this renegotiation had been

has misquoted the grounds stated in Gulf's motion for summary judgment. Apparently, the majority declines to follow well-settled summary judgment precedent or may think that the

language of the summary judgment, rather than the grounds in the motion, determines the grounds upon which summary judgment was granted.

completed did Metro cancel its policy with Gulf. Thus, the result of the majority's holding will be to permit an insured vendee to cancel its insurance coverage *after the loss,* to confer liability upon the vendor's indemnitor, and to avoid the holding of the supreme court in *Paramount.* Equity should not condone such a course of conduct chosen by Metro. *E.g., Sudderth v. Howard,* 560 S.W.2d 511 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

In adhering to the supreme court's instruction to consider the transaction as a whole, rather than the situation existing solely at time of loss, I would not allow Metro to recover upon any equitable theory when it created, by cancelling its policy with Gulf, the very situation resulting in its loss. *Paramount,* 353 S.W.2d at 844. Accordingly, I would reverse the judgment in favor of Metro and render judgment on Indiana Lumbermens' motion for summary judgment that Metro is not entitled to recover from Indiana Lumbermens. Tex.R. Civ.P. 434.

Neither can I agree that the contract price of the property in question was not proper summary judgment evidence of damages. Instead, I would hold that the summary judgment evidence, which consisted of the contracted amount less the opinion of the fair market value of the lot, raised but a fact issue with respect to the amount of damages suffered. Although this summary judgment evidence was some evidence of market value, it does not establish damages of the reasonable market value of the property, before and after, as a matter of law; instead, it but raises a fact issue as to the reasonable market value. *See O'Byrne v. Oak Park Trust & Savings Bank,* 450 S.W.2d 411, 415 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.) (per curiam), 457 S.W.2d 277 (Tex.1970) (opinion evidence does not establish a fact as a matter of law).